```
 1              IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF OREGON

 3   BRIAN CARLOS, on behalf of   )
     himself and all other        )
 4   similarly situated,          )
                                  )
 5            Plaintiff,          )  Case No. 3:14-cv-00921-MO
                                  )
 6      v.                        )
                                  )
 7   PATENAUDE & FELIX, A.P.C.,   )  August 18, 2015
                                  )
 8            Defendant.          )  Portland, Oregon
     _____)

 9

10

11

12

13

14

15                      Oral Argument

16               TRANSCRIPT OF PROCEEDINGS

17      BEFORE THE HONORABLE MICHAEL W. MOSMAN

18         UNITED STATES DISTRICT COURT JUDGE

19

20

21

22

23

24

25
```

```
 1
 2                            APPEARANCES
 3
 4   FOR THE PLAINTIFF:      Mr. Bret A. Knewtson
                             3000 N.W. Stucki Place, Suite 230-M
 5                           Hillsboro, OR 97124
 6
 7                           Mr. Mark G. Passannante
                             Broer & Passannante, PS
 8                           1001 S.W. Fifth Avenue, Suite 1250
                             Portland, OR 97204
 9
10
11   FOR THE DEFENDANT:      Ms. Kelly Frances Huedepohl
                             Mr. Peter D. Eidenberg
12                           Keating Jones Hughes, P.C.
                             One S.W. Columbia, Suite 800
13                           Portland, OR 97258
14
15
16
17   COURT REPORTER:         Bonita J. Shumway, CSR, RMR, CRR
                             United States District Courthouse
18                           1000 S.W. Third Ave., Room 301
                             Portland, OR  97204
19                           (503) 326-8188
20
21
22
23
24
25
```

| 1 | (P R O C E E D I N G S) |
|---|---|

1                   (P R O C E E D I N G S)

2         THE CLERK:  Your Honor, this is the time and place

3 set for oral argument in Case No. 3:14-cv-921-MO, Brian Carlos

4 v. Patenaude & Felix A.P.C.

5         Counsel, can you introduce yourself for the record.

6         MR. PASSANNANTE:  Good morning.  Mark Passannante on

7 behalf of plaintiff, Your Honor.  With me is Bret Knewtson.

8         MR. EIDENBERG:  Peter Eidenberg on behalf of

9 defendants, and Kelly Huedepohl as well, Your Honor.

10         THE COURT:  Thank you all for being here.

11         The first issue I want to discuss is whether this

12 case involves a written contract or not.  You've briefed that

13 fairly extensively.  I've taken a close look at it also.  So

14 I'm just going to start by inviting you to add something that

15 you may not have already put in your briefing, if you have

16 anything like that, to your arguments about whether this

17 involves a written contract or not.

18         I'll start with plaintiffs.

19         MR. PASSANNANTE:  Judge, I think that other than

20 restating what we have in the brief, I think it was fairly

21 extensively addressed.  I think our main point is that the best

22 that they have is the application, that there was a box clicked

23 but no signature.  There was a change in terms, and as

24 Mr. Carlos pointed out in his declaration, the credit limit

25 wasn't disclosed to him until after he applied for it.  The

1    card -- and the card and the contract never took effect until

2    he actually used the card.  So we don't believe there was a

3    written contract under the original statute of limitations.

4         THE COURT:  Do you agree it's a matter that can be

5    resolved as a question of law at summary judgment?

6         MR. PASSANNANTE:  Yes, Your Honor.

7         THE COURT:  So although he's provided a statement

8    about his experience in connection with his own individual

9    contract, whether these things are, in fact, written contracts

10   or not, you acknowledge is a legal question?

11        MR. PASSANNANTE:  Yes, Your Honor.  We don't believe

12   there's any circumstances that -- there's several different

13   ways that the contract can be formed.  You can go online, you

14   can call in, I think you can -- there's a little check-the-box

15   mailing that you can mail back in.  Our contention is that the

16   signature on the application does not constitute and cannot

17   constitute a written contract.  So whether somebody called in

18   or applied for the card in some other fashion shouldn't matter,

19   and whether or not this is a written contract --

20        THE COURT:  Well, I guess that's the import of my

21   question, is that you get to summary judgment either by no

22   material fact dispute --

23        MR. PASSANNANTE:  Correct.

24        THE COURT:  -- that is on a fact issue that a

25   rational trier of fact couldn't go any other way even in the

1   light most favorable to the other side, or you get there by

2   virtue of the issue presented being a question of law.

3           MR. PASSANNANTE:  That's correct.

4           THE COURT:  And this is the latter, right?

5           MR. PASSANNANTE:  That's correct.

6           THE COURT:  Thank you, sir.

7           MR. PASSANNANTE:  Thank you.

8           THE COURT:  How about for defendants?

9           MS. HUEDEPOHL:  So, Your Honor, I disagree with

10  plaintiff's counsel that this is an issue that can be decided

11  as a matter of law for each and every contract that Capitol One

12  enters into.  Plaintiff's contract is written as a matter of

13  law because he logged into Capitol One's website, he applied

14  after reviewing and having made available to him the material

15  terms, and to the extent any material terms were not part of

16  that application, they were enclosed in the envelope that

17  included the credit card, and he signed it.  Under those

18  circumstances, as a matter of law, Virginia would find that

19  plaintiff's contract is written.

20          THE COURT:  And those facts, you would agree -- at

21  least the bare facts about how he entered into this contract

22  are currently undisputed?

23          MS. HUEDEPOHL:  Yes, Your Honor.  Plaintiff disputes

24  that he intended to sign the document.

25          THE COURT:  Sure.  That's the import of the facts,

1  but that he entered into it essentially through an online

2  arrangement, as opposed to a phone call or something else, that

3  is not disputed?

4          MS. HUEDEPOHL:  Yes, Your Honor, that is not

5  disputed.

6          THE COURT:  The basic mechanism for doing that is

7  also not disputed, do you agree?

8          MS. HUEDEPOHL:  Yes, Your Honor.

9          THE COURT:  So that's why at least in this case you'd

10 contend that the remaining issue of whether what happened

11 constitutes a written contract or not is a legal question

12 susceptible to resolution at summary judgment?

13         MS. HUEDEPOHL:  Yes, Your Honor.

14         THE COURT:  But you think that there may be other

15 cases where it would not be so susceptible because the basic

16 facts are disputed, something like that?

17         MS. HUEDEPOHL:  Because the basic facts cannot be

18 known without individual inquiry.  Once it is determined

19 whether a particular debtor entered into a contract with

20 Capitol One over a telephone, by sending back the mailed

21 solicitation, or logging online, from that point there may be

22 no disputed facts and it may become resolvable as a matter of

23 law.  But in order to determine whether a particular contract

24 was written or unwritten, one -- the Court would need to know

25 how that contract actually got formed.

1          THE COURT:  Your contention, I assume, is that all

2    contracts entered into in fundamentally this way are written?

3          MS. HUEDEPOHL:  Yes, Your Honor.

4          THE COURT:  I assume you'd take the same position

5    with regard to the mail-in?

6          MS. HUEDEPOHL:  With the returned mailer?  Yes, Your

7    Honor.

8          THE COURT:  So maybe you take a different position

9    with regard to a phone call?  Is that how this works?

10         MS. HUEDEPOHL:  Depending on the circumstances, Your

11   Honor.

12         THE COURT:  All right.

13         MS. HUEDEPOHL:  If, Your Honor, all of the material

14   terms were included with the credit card, and the debtor

15   acknowledges signing the credit card, then under Virginia law,

16   where one party to a contract signs a document that is provided

17   along with other documents that comprise the contract, that --

18   the signed document operates as the signature sheet for the

19   entire contract.

20         THE COURT:  Thank you.

21         The second issue is when does the statute of

22   limitations start running, and the parties, of course, disagree

23   as to what Virginia law says about that.  I'm assuming from

24   your briefing that the parties agree that it is, in fact,

25   Virginia law that controls this question.

1          Is that right for plaintiffs?

2          MR. PASSANNANTE:  That's correct, Your Honor.

3          THE COURT:  And for the defense?

4          MS. HUEDEPOHL:  Unless there is a reason that Oregon

5     law would apply because there is a material difference that

6     provides one party either an insufficient opportunity to bring

7     an action or an insufficient opportunity to defend against an

8     action.  If that's the case, then Oregon's accrual law applies.

9          THE COURT:  So we start with Oregon, and Oregon sends

10    us to Virginia unless there's this critical difference.  And

11    the parties haven't really pointed out that critical difference

12    on these facts, right?

13         MS. HUEDEPOHL:  Your Honor, if Virginia approves the

14    first minor breach and requires a creditor to sue within three

15    years of the first minor breach, that is a critical difference

16    from Oregon law.  Oregon law gives the debtor and the creditor

17    an opportunity to work out that one single breach by allowing

18    the statute to restart whenever the debtor makes a payment.

19         THE COURT:  Well, let's start with Virginia law.

20    It's your contention that Virginia law does the same thing --

21    right? -- that the statute of limitations doesn't begin with

22    the first breach if there's some kind of workout going on?

23         MS. HUEDEPOHL:  Your Honor, under Virginia law, this

24    is actually an open question.  The breach under the contract

25    occurs when Capitol One declares -- actually declares the party

1  to be in default, which in this case, if it's the charge-off

2  date, did not occur until 2008.

3  However, no Virginia court has interpreted, that

4  defendant is aware of, a similar contractual provision to

5  determine when the breach runs.

6  There's also a question, Your Honor, about whether or

7  not this type of account qualifies as an open account under

8  Virginia law.  If it does, then Virginia Statute 8.01-249

9  explicitly states that accrual occurs on the date of last

10  payment or last purchase, whichever is later.  Virginia courts

11  haven't addressed that issue, Your Honor.

12  It is our -- it is defendant's contention that under

13  the terms of this contract, the breach occurred on the date of

14  either charge-off when default has occurred or on the date when

15  the first lawsuit was filed in 2009, which is the first date

16  that Capitol One demanded payment in full from plaintiff.

17  THE COURT:  And those two dates are?

18  MS. HUEDEPOHL:  The first lawsuit was filed in

19  October of 2009.  I have that date, Your Honor.  One moment.

20  THE COURT:  August 6th, '09?

21  MS. HUEDEPOHL:  That may well be, Your Honor.

22  THE COURT:  Is that right?

23  MS. HUEDEPOHL:  August 5th, 2009, I have, Your Honor.

24  THE COURT:  And the charge-off date?

25  MS. HUEDEPOHL:  Is -- I apologize, Your Honor.  I'll

1   have that date in just one moment.  But I believe it was in

2   August of 2009.

3            THE COURT:  So let's go backwards just a little.

4            MS. HUEDEPOHL:  Excuse me.  August 11, 2008.  My

5   apologies, Your Honor.

6            THE COURT:  You agree that in November, probably

7   November 3rd of '06, plaintiff's account balance does exceed

8   his credit limit, right?

9            MS. HUEDEPOHL:  Yes, Your Honor.

10           THE COURT:  In violation of the terms of his

11  agreement?

12           MS. HUEDEPOHL:  Yes, Your Honor -- well, the credit

13  limit -- if the credit limit is exceeded, the account contract

14  provides that fees may be collected and it can be considered a

15  default, but it is not an automatic default that requires

16  payment in full of the balance.

17           THE COURT:  And that's fundamentally your reason why

18  you think the statute doesn't begin running on that date?

19           MS. HUEDEPOHL:  Yes, Your Honor.  Unlike a demand

20  note, credit cards are very heavily regulated by federal law,

21  and there are certain circumstances under which payment in full

22  can be demanded.  In all other circumstances, the creditor must

23  permit the debtor either five years to pay the balance in full

24  or a certain minimum percentage of the balance.  It's

25  essentially based on what they have been charging prior to the

1    closure of the account.  But this is a highly regulated

2    account, and the creditor must demand payment from the debtor

3    before it is actually due.  This makes it a material

4    distinction from a demand note.

5        THE COURT:  So you'd apply the same reasoning to the

6    next significant event, which is the last minimum payment made

7    by plaintiff before he's in any kind of third-party

8    arrangement, in the end of January of '07?

9        MS. HUEDEPOHL:  Yes, Your Honor.

10       THE COURT:  Same basic structure, which is that

11   you're not at liberty to simply call the entire balance in and

12   demand everything on that date?

13       MS. HUEDEPOHL:  Well, you're not at liberty to say

14   that the entire balance is called in until you've given that

15   notice.

16       THE COURT:  There's a period of time between the last

17   minimum payment, January 31 of '07, and April of '07, when

18   Capitol One receives this third-party debt management agency

19   payment plan?

20       MS. HUEDEPOHL:  Yes, Your Honor.

21       THE COURT:  What with regard to the statute of

22   limitations, in your view, is going on during that period of

23   time?

24       MS. HUEDEPOHL:  During that period of time, Capitol

25   One is on notice that plaintiff may have engaged in a permanent

1    or material breach of his contract.  Capitol One is at that

2    period of time at liberty to make a determination is it going

3    to continue to work with plaintiff and keep the account open or

4    keep it subject to certain term -- repayment terms, or is it

5    instead going to declare that plaintiff, in fact, owes the full

6    balance.

7            THE COURT:  So while you don't yet know if this

8    notice from a third-party manager is going to come in at all,

9    if it had never come in, then your position is that the statute

10   still wouldn't have begun to run, even though the plaintiff had

11   quit paying and there had been a few months that the plaintiff

12   had quit paying, until Capitol One made a decision to demand

13   payment?

14           MS. HUEDEPOHL:  Yes, Your Honor.

15           THE COURT:  And it's the letter or some other notice

16   demanding payment that starts the statute?

17           MS. HUEDEPOHL:  Yes, Your Honor.  Potentially also

18   charge-off on the basis of the federal law that I cited in our

19   reply brief, if Capitol One, concurrent with the charge-off,

20   made the decision the debt was unlikely to be paid.  That is

21   one element.  We have no evidence of that in this case, Your

22   Honor.

23           THE COURT:  And that could -- that window where

24   there's no payment being made but no demand from Capitol One

25   yet either could extend for quite some period of time, couldn't

1   it?

2           MS. HUEDEPOHL:  Potentially, yes, Your Honor.

3           THE COURT:  With no real limiting principle on how

4   long it extends, and the statute not running until the demand

5   is made?

6           MS. HUEDEPOHL:  Your Honor, under the Truth in

7   Lending Act, that period actually is capped at six months.  The

8   creditor is required to charge off balances at six months with

9   no payment.

10          THE COURT:  So the maximum you could have waited if

11  no third-party manager had popped its head up would have been

12  six months?

13          MS. HUEDEPOHL:  Yes, Your Honor.

14          THE COURT:  And then I take it your view is that with

15  the third-party manager showing up, that period in which

16  Capitol One had not yet started the clock running, according to

17  your view, by it not yet making any demand or charge-off, was

18  extended because you couldn't have done so while still working

19  with this third-party manager and plaintiff?

20          MS. HUEDEPOHL:  Yes, Your Honor.  And also because

21  the third-party manager, when it submitted payment to Capitol

22  One, it included information with that payment sufficient to

23  identify the payment to Mr. Carlos's specific account.  When it

24  did that, it restarted the statute of limitations under

25  Virginia law.  Virginia, if there is a writing that is

1    sufficient to identify a payment to a particular debt, Virginia

2    courts imply from that writing a promise to pay the debt.  And

3    when that happens, it restarts the statute of limitations.

4         THE COURT:  I don't remember the name, I'm sorry, but

5    the case you cite really -- for that proposition sort of states

6    the opposite from which you get the inference that this would

7    be the situation.  What I mean by that is in the case you cite,

8    the courts find no sufficient identification of the payment to

9    the borrower, and therefore no promise to pay.  And you take

10   from that an inference that if there is a sufficient link,

11   there is a promise to pay, and therefore the statute is either

12   not started or tolled, depending where we are.

13        MS. HUEDEPOHL:  The inference from that case is --

14        THE COURT:  What is the name of that case again?

15        MS. HUEDEPOHL:  *Guth v. Hamlet*, perhaps.  It's --

16        THE COURT:  Is that sort of opposite inference from

17   the actual facts of the case your best authority for this

18   proposition --

19        MS. HUEDEPOHL:  No, Your Honor.

20        THE COURT:  -- under Virginia law?

21        MS. HUEDEPOHL:  No, Your Honor.  Under *Nesbit* and the

22   other cases that defendant cited, any writing that identifies

23   that an account exists and is properly being -- and the

24   creditor is properly attempting to collect it is sufficient to

25   restart the statute of limitations.  Those cases would apply

1    equally to a situation where a payment is received and it does

2    identify the account or the debt for which the payment is made.

3              THE COURT:  You get payment under this debt

4    management program for a period of time --

5              MS. HUEDEPOHL:  Yes.

6              THE COURT:  -- including a final payment in December

7    of '07.

8              MS. HUEDEPOHL:  Yes, Your Honor.

9              THE COURT:  Plaintiff takes some exception to that,

10   spending a little bit of time arguing that it's at least a

11   dispute of fact, if not clear, that plaintiff didn't make this

12   last payment.  I guess I'm not sure why that matters.  Does it,

13   in your view, matter who makes the last payment if it's clearly

14   linked to plaintiff's account?  Plaintiff has an anonymous rich

15   uncle send in money.  Does anybody care where the money came

16   from?

17             MS. HUEDEPOHL:  Yes, Your Honor.

18             THE COURT:  Why?

19             MS. HUEDEPOHL:  Plaintiff's agent acts on behalf of

20   plaintiff and, in fact, the statute that says an action in

21   writing by a debtor or a debtor's agent sufficient for a court

22   to imply a promise to pay restarts the statute of limitations.

23             So if plaintiff has an anonymous rich uncle who

24   without plaintiff's permission sends in a payment on

25   plaintiff's account, I believe, Your Honor, that Virginia would

1    not restart the statute of limitations if the plaintiff

2    established that it was not with his authority or his

3    permission.

4         THE COURT:  If you go a few months and the anonymous

5    rich uncle every month makes full payment, and plaintiff tells

6    you, "I'm not going to pay," you're saying that you could sue

7    plaintiff for nonpayment, even though there is no nonpayment?

8         MS. HUEDEPOHL:  Well, Your Honor, that's a question

9    Virginia courts haven't decided, and I think it would be very

10   fact dependent on the case.  But I agree, Your Honor, so long

11   as --

12        THE COURT:  That seems a little odd if you're getting

13   paid, even though the borrower doesn't want you to get paid,

14   the borrower is saying, "I hate you, I'm never going to pay you

15   again," but somebody else pays -- I mean, let's just say it's

16   the start of the whole problem, and plaintiff says, "I'm making

17   this one last payment, I'm not going to pay anymore," but

18   somebody else pays, there's never a gap.  You couldn't sue for

19   nonpayment, could you?

20        MS. HUEDEPOHL:  I think, Your Honor, in those

21   circumstances, if the creditor were aware that the debtor was

22   denying the debt, the creditor could sue for anticipatory

23   repudiation at a minimum.

24        THE COURT:  All right.  So, in your view, the last

25   payment is by an agent of plaintiff, even in the light most

1   favorable to the nonmoving party here?

2          MS. HUEDEPOHL:  Yes, Your Honor.

3          THE COURT:  How?

4          MS. HUEDEPOHL:  Both federal law and Oregon law

5   require that any third-party debt management agent who acted on

6   behalf of plaintiff enter into a signed agreement with

7   plaintiff.  Under federal law, it's any for-profit entity, and

8   under Oregon law, as of 2007, it's any entity that charged a

9   fee.

10          THE COURT:  So is it, in your view, undisputable that

11   the payment was made by an agent of plaintiff?

12          MS. HUEDEPOHL:  Your Honor, I believe it is

13   undisputed.  There was a deposition prior to this notice where

14   plaintiff testified at deposition that he was not aware of

15   having entered into any agreement.  This document was

16   subsequently produced by Capitol One pursuant to subpoena, and

17   plaintiff has not denied entering into that agreement

18   subsequent to the document being produced.

19          THE COURT:  Well, isn't the briefing in this summary

20   judgment omnibus hearing a form of denial?

21          MS. HUEDEPOHL:  Your Honor, plaintiff repeatedly

22   states throughout his briefing "plaintiff doesn't know."

23   Plaintiff knows he did not write the $55 checks himself, but

24   repeatedly in the briefing, subsequent to the disclosure of

25   this document, plaintiff has said plaintiff doesn't know who

1   made the payments.

2           THE COURT:  So, in your view, the question I have to

3   ask is could a juror come out any other way in the light most

4   favorable to plaintiff.  And you say if jurors hear from

5   Capitol One that the payment was made by a third-party manager

6   who necessarily was in an agency relationship with plaintiff,

7   and Capitol One knows that's where the money came from, and

8   plaintiff tells the jurors, "I don't know who made the

9   payment," that in the light most favorable to plaintiff, no

10  rational jury could only find in favor of Capitol One on this

11  dispute?

12          MS. HUEDEPOHL:  In the absence of a further statement

13  by plaintiff that "I did not retain a third-party debt

14  management agency to make payments," yes, Your Honor.

15          THE COURT:  And therefore somewhere in there, around

16  the time of this last payment, waiting a little bit longer for

17  nonpayment in January, you get to the point where no payments

18  are being made -- we'll call that early February -- you still

19  contend that the clock hasn't started ticking on the statute of

20  limitations then, it's a few months later, when the first

21  lawsuit is filed?

22          MS. HUEDEPOHL:  That is defendant's position, Your

23  Honor.

24          THE COURT:  Because you're in the same boat as you

25  were in before the third-party manager showed up?  You were

```
 1   able to take some time, up to six months, to decide what to do
 2   about all this?
 3              MS. HUEDEPOHL:  Capitol One was, yes, Your Honor.
 4              THE COURT:  That's what I meant by "you."
 5              All right.  Thank you.
 6              MS. HUEDEPOHL:  Yes, Your Honor.
 7              THE COURT:  We'll walk through the same sort of
 8   series of events, then, for plaintiffs.
 9              MR. PASSANNANTE:  Yes, Your Honor.
10              THE COURT:  I guess your contention is that --
11              MR. PASSANNANTE:  The claim accrues when the default
12   occurs.  Whether Capitol One waits six months to charge off the
13   balance is up to Capitol One.  That doesn't --
14              THE COURT:  Well, let me just go through one at a
15   time, first of all.  Are you contending the clock starts
16   ticking not when the last payment comes in but when the account
17   balance exceeds the credit limit?  Is that really when you
18   think it starts?
19              MR. PASSANNANTE:  I think that's when the account
20   accrues, that's when it's first breached, and I think there was
21   a missed payment --
22              THE COURT:  But is it a breach or is it just
23   susceptible of being a breach?
24              MR. PASSANNANTE:  I think it's a breach.  I think the
25   agreement calls for a credit limit, and the agreement calls
```

1 that if you exceed the credit limit -- I mean, that's a breach

2 of contract.  Whether or not -- how Capital One deals with it

3 does not determine whether or not there's a breach.

4    THE COURT:  Well, it does if the contract language

5 says that it's capable of being viewed as a breach.  So what

6 does the contract language say on that score?  If it's

7 discretionary, then it's not a breach until they say it is.

8    MR. PASSANNANTE:  I think as far as the account

9 closure and suspension of credit privileges --

10    THE COURT:  I'm interested in how the contract treats

11 exceeding the credit limit.

12    MR. PASSANNANTE:  Your Honor, I'm sorry.  I'm trying

13 to figure out where the default provision is again.

14    So the default language -- I think this is Exhibit 1.

15 "We may, in our sole discretion, declare default of this

16 agreement if we don't receive full payment."

17    That provision calls -- declares a default if you

18 don't make the full amount of any minimum payment, you exceed

19 any credit limit, an item used to make payment on your account

20 is not honored or cannot be processed.

21    THE COURT:  And the sentence you read that started

22 with "we may," what's that sentence?

23    MR. PASSANNANTE:  It does start, "We may, in our sole

24 discretion."  So that's a different issue to me as to whether

25 or not there's a breach.  There's a breach because there's a

1    default.  Whether or not they exercise their right to declare a

2    default shouldn't toll the statute of limitations.

3            THE COURT:  What's the sentence say?  "We may" what?

4            MR. PASSANNANTE:  "We may, in our sole discretion,

5    declare a default under this agreement."

6            THE COURT:  So how is there a default if they have

7    the discretion to say it's not a default and exercise that

8    discretion?

9            MR. PASSANNANTE:  So as a part of the agreement,

10   there's a credit limit, and it says, under that credit limit,

11   "You agree not to allow the balance of your account or the

12   balance of the applicable segments of your account to exceed

13   the credit limits."

14           That's part of the agreement as well.  So once that

15   account goes over, that's a breach of the agreement.

16   Whether -- there's a different issue about whether it's a

17   breach of the agreement.  The agreement says, I'm not going to

18   let my credit limit go over that amount.  Once it does, they've

19   breached that provision of the agreement, Your Honor.  Then

20   Capitol One has an election to declare a default or not.  But

21   whether or not they decide to declare a default doesn't toll

22   the statute of limitations.  The breach occurs when it went

23   over the credit limit, because that's -- Mr. Carlos, as with

24   any other cardholder, agreed not to exceed the credit limit.

25   That's when the breach occurred and that's when the claim

1   accrues.  The claim doesn't accrue when Capitol One decides it

2   accrues.  It accrues when there's a breach.

3          THE COURT:  Do you need to speak to your partner for

4   a moment?

5          MR. PASSANNANTE:  I think Mr. Newtson is also

6   indicating that Capitol One also charges for it.  But I think

7   your question had to do with whether or not exceeding the

8   credit limit in and of itself constitutes a breach or is only a

9   breach if Capitol One says it is.  And I just referred to the

10  card agreement that says:  I agree I won't go over the limit.

11  If you agreed not to go over the limit, and then you go over

12  the limit, that's a breach.  How Capitol One decides to treat

13  that breach I think is up to Capitol One.

14         THE COURT:  That's not my question.  My question is

15  if Capitol One, learning of a violation of the agreement, says,

16  "We're not going to declare you in default of this agreement,"

17  then why doesn't that prevent the statute start running?  If

18  you're not in default under the terms of the agreement -- I

19  assume, for example, that Capitol One couldn't write a letter

20  to a cardholder, saying, "We've decided not to declare you in

21  default.  You pay $55 a month, we'll just keep working with

22  you."  I'm assuming Capitol One couldn't do that and go sue

23  that person.

24         MR. PASSANNANTE:  I agree.  Once they're starting to

25  take payments, they can't.  The question is two separate

1    questions.  The statute of limitations accrues when the claim

2    accrues.  The claim accrues upon the breach.  If Capitol One

3    comes in and says, "We're waiving this breach and we're

4    deciding not to declare a default," that doesn't mean that

5    there wasn't a breach.

6            THE COURT:  So do you agree then that when they start

7    taking payments from this third-party debt management program,

8    that if the clock had started running earlier, it quit running

9    once they started taking payments again?

10           MR. PASSANNANTE:  I think in this particular case

11   that could be a question of fact because Mr. Carlos doesn't

12   recall making any of those payments and he said he didn't know.

13   The letter from Capitol One seems to acknowledge and state that

14   they received a letter from a third-party debt management

15   agency.  We don't believe that that constitutes a written

16   agreement to pay the principal and interest.  It's a

17   third-party letter.  And, actually, Capitol One's letter simply

18   acknowledges receiving a letter from a third party saying that.

19   Mr. Carlos --

20           THE COURT:  So if the facts were a little clearer,

21   though, someone quits paying, nothing happens -- that is,

22   Capitol One does nothing for a while -- in your view, they're

23   in breach of the agreement and the clock has started ticking.

24           And then you would agree in the abstract that if that

25   person then starts paying again and Capitol One agrees to

1    receive payment, having not yet done anything, that --

2        MR. PASSANNANTE:  I think that would toll the

3    statute, Your Honor, on the written promise to pay, even under

4    Virginia law.

5        THE COURT:  And then in your view, if that had

6    happened with this third-party management agency, then

7    somewhere around the time of the last payment, the clock would

8    start ticking again.  Capitol One wouldn't get a few months to

9    decide what to do about it, it would start ticking again?

10        MR. PASSANNANTE:  They would have a few months to

11   start dealing with it.  The question is whether the clock

12   starts ticking, which to me are two different questions.  The

13   clock doesn't start ticking --

14        THE COURT:  Yeah, I understand that.  That is my

15   question, whether them taking a few months to decide what to do

16   about it, which they're entitled to do, in your view doesn't

17   toll the statute at all.  It's that last payment or at least

18   one month later that the clock starts ticking again after

19   receiving renewed payments.

20        MR. PASSANNANTE:  That would be the latest, Your

21   Honor, certainly, because it's like -- if you think about a car

22   accident, I get hit by a car on February 1st, I decide to think

23   about whether or not I want to bring a claim because they've

24   hit me doesn't mean the statute of limitations doesn't start

25   running until I've decided to make a claim for getting hit by

1    the car.

2            THE COURT:  It's complicated enough under the FDCPA

3    without trying to draw analogies to car accidents.

4            MR. PASSANNANTE:  My apologies.

5            THE COURT:  I get your point, though.

6            Let me ask you this.

7            MR. PASSANNANTE:  The other issue --

8            THE COURT:  Excuse me.  Let me ask you this question.

9    We've talked about your view of the -- what I'll call the

10   inactive periods between last payments and Capitol One action,

11   and we've talked about the period of time of third-party

12   payments.

13           MR. PASSANNANTE:  Correct.

14           THE COURT:  Which you contend doesn't toll the

15   statute here for somewhat particular reasons to this case.  It

16   might in other cases, but in your view doesn't in this case.

17           MR. PASSANNANTE:  Correct.

18           THE COURT:  Let's talk about the filing of a lawsuit

19   itself, the first lawsuit.  Why wouldn't that lawsuit, from

20   something like filing to dismissal, toll the statute of

21   limitations?

22           MR. PASSANNANTE:  The dismissal wasn't a decision on

23   the merits, but there was an arbitration, there was a decision

24   on the merits.  I think typically that lawsuit could toll, but

25   the only reason that --

 1          THE COURT:  I don't want to talk about could.  Let's

 2   start with the filing.  At some point after the first lawsuit

 3   is filed, August 6th of '09, wouldn't normally in that case a

 4   lawsuit being filed on the debt toll the statute of

 5   limitations?  I mean, that's the whole point, to get them to

 6   file.

 7          MR. PASSANNANTE:  Correct, Your Honor.  Normally that

 8   would toll.  Virginia law --

 9          THE COURT:  Let me finish my question.  Why isn't

10   that what's happening here?

11          MR. PASSANNANTE:  Because there was a decision in

12   that particular lawsuit, and Virginia statute controls.  Oregon

13   has got a different statute that says the filing of a lawsuit

14   will toll.  I believe when the statute of limitations expires

15   during the pendency of the action, then you've got 180 days

16   after that.  It actually doesn't toll, it extends the statute

17   of limitations for 180 days.

18          Virginia's statute is a little bit different.  I

19   think it's really a matter of state law and it's a matter of

20   statutory interpretation.  Virginia's state law says that if

21   the filing of the lawsuit is dismissed without a decision on

22   the merits, it tolls the statute of limitations.

23          Here there was actually an arbitration.  The problem

24   with that lawsuit is that arbitration never got reduced to a

25   judgment, other than a judgment of dismissal.  So there was a

1    hearing, a decision on the merits.  That would be the only

2    question about not tolling this statute of limitations.

3            Our fundamental position is that if it's a three-year

4    statute that applies, that doesn't matter either, Your Honor,

5    because there's still --

6            THE COURT:  I still want to try to deal with it,

7    though.  So your view on the statute of limitations with

8    relation to the first lawsuit is that it just wasn't of a

9    character that ends up tolling the statute of limitations?

10           MR. PASSANNANTE:  Because it was actually pursued

11   through an arbitration decision, and the statute in Virginia

12   says that a dismissal without a decision on the merits operates

13   to toll the statute of limitations.  The fact that Capitol One

14   with their previous lawyer chose not to pursue that claim

15   further takes it outside the Virginia statute.

16           If the Court finds that --

17           THE COURT:  That seems a little odd.  I mean, if you

18   have a decision on the merits, you don't need to toll the

19   statute, because that's the whole point.  Then you're done with

20   the case.

21           MR. PASSANNANTE:  I agree with that.

22           THE COURT:  If you have a decision that's not on the

23   merits, you know, the case gets dismissed by the plaintiff, for

24   example, without prejudice, then you're going to toll the

25   statute, I guess, between the filing and the dismissal,

1  basically?

2         MR. PASSANNANTE:  Correct.  And that's what the

3  Virginia statute holds.

4         THE COURT:  This is sort of in between.  This is a

5  decision sort of on the merits but not reduced to judgment?

6         MR. PASSANNANTE:  Correct.

7         THE COURT:  So you think I ought to treat that more

8  like a decision on the merits which doesn't toll the statute

9  than a decision on the merits which does?

10        MR. PASSANNANTE:  Correct.  If you look at the

11 statute of limitations -- or that tolling provision, it says a

12 decision not on the merits, which is designed to say, well,

13 look, you filed, so you've expressed an intention, you've given

14 notice to the other side, but it never ended up resulting in a

15 decision.  Maybe there was some reason to voluntarily dismiss

16 where it wasn't decided on the merits.  Because nobody had

17 their day in court, we're tolling.

18        Here Capitol One, for whatever reason -- maybe

19 they've got a claim against their previous lawyer -- did not

20 reduce their previous action to a judgment.  The fact that they

21 didn't do that shouldn't now give them the right to say, oh,

22 and when we had that going, the statute should be tolled.  It

23 falls outside the statute on tolling.

24        THE COURT:  Thank you.

25        Let's go backwards just a little bit in our

1    discussion.  What's your best authority for the idea that the

2    period between some sort of breach of the contract -- let's

3    just go with the simplest one, non-payment -- and the period in

4    which Capitol One exercises its contractual right not to

5    declare the person in default nevertheless starts the statute;

6    what's your best Virginia authority for that proposition?

7          MR. PASSANNANTE:  Your Honor, I think it's the

8    statute itself.  And if I could refer to our motion for summary

9    judgment, our original briefing pointed out that what starts

10   the statute of limitations is when the claim accrues.  That

11   claim accrues when there's a breach.  Again, I think you go

12   back to the contract.

13         THE COURT:  Would you read me the statutory language

14   you're referring to.

15         MR. PASSANNANTE:  So it's on page 19, where we

16   address accrual.  "The cause of action accrues" --

17         THE COURT:  I'm sorry.  I'm going to ask you as

18   you're reading to slow down.

19         MR. PASSANNANTE:  My apologies.

20         THE COURT:  Go ahead and read me the statutory

21   language you're relying on.

22         MR. PASSANNANTE:  Your Honor, I think it was in a

23   case.  The first one was on -- "The cause of action on a note

24   accrues when the obligation to pay is breached," *Rivera v.*

25   *Nedrich*, 259 Va. 1.  It's a 1999 case.

1      THE COURT:  So you heard your opponent discuss the

2  differences between this setting and the setting of the

3  promissory note.  What do you make of her argument that the

4  statute of limitations on a promissory note doesn't apply very

5  well here?

6      MR. PASSANNANTE:  Well, I think that going down in

7  our brief, we cite to a claim on an account, and that is

8  *Columbia Heights v. Griffith-Consumers Company*, 205 Va. 43rd --

9  43.  "It is well-settled jurisdiction that the statute of

10  limitations begins to run from the time the account is due."

11      So the best argument that they have is, well, under

12  federal law --

13      THE COURT:  Well, let me just back you up.  I'll tell

14  you their best argument, and I'm curious what you think of it.

15  Their best argument is that the account is not due if you've

16  breached your obligation to pay but the credit company has

17  said, "Well, you're not in default."

18      MR. PASSANNANTE:  Judge, but they're not saying

19  you're not in default.  They're making election to wait to

20  charge off for six months.

21      THE COURT:  Not quite.  They're not saying that

22  you're not in breach, but they are saying you're not in

23  default.  That's exactly what the contract allows them to say.

24      So why doesn't saying you're not in default mean that

25  the account is not due?  You may be in breach but your payment

1    is not due.

2          MR. PASSANNANTE:  Well, they kept saying -- they kept

3    sending statements, Your Honor.  If you look at each one of the

4    statements, it asks for a payment to be due, a minimum amount

5    due.  Even with the agreement with the third-party debt agency,

6    that required payments of $55.  What federal law says is that

7    you can't declare the entire balance due until you have

8    declared charge-off, which occurred in August of 2008.  Federal

9    law did not require them to wait six months.  That's up to

10   Capitol One.  Just because you wait to assess or to declare

11   that the entire balance is due doesn't mean that the statute of

12   limitations doesn't begin to run, because the cause of action,

13   their right to declare that amount full and due accrued when

14   the breach occurred.  That's when their right accrued.  The

15   fact that they don't exercise that right for a period of time

16   doesn't toll the statute of limitations, and there's nothing in

17   the Virginia statute of limitations that indicates it would be

18   tolled while the creditor thinks about what they want to do.

19         THE COURT:  Thank you.

20         We didn't talk about the first lawsuit much itself.

21   So your view on -- I guess this falls between two

22   possibilities, neither of them exactly this case:  One, that

23   the statute is tolled if the case doesn't get resolved on the

24   merits; and two, where the statute, I guess, is not tolled if

25   it is resolved on the merits.  But we understand why that would

1    be, because then the case is over; you don't need the statute

2    anymore.

3         I guess you'd pick the -- this is a lot closer to the

4    former than the latter?

5         MS. HUEDEPOHL:  Yes, Your Honor.  The Virginia

6    statute refers to a judgment dismissing the case.  The judgment

7    in this particular matter dismissed without prejudice; that is,

8    under ORCP 54, all judgments, unless they state otherwise, are

9    without prejudice.

10         It's important to note, Your Honor, that it is the

11    arbitrator who failed to reduce the award to judgment.  It's

12    not the plaintiff who failed to reduce the award to judgment.

13         It's also important to note that plaintiff had an

14    absolute right to trial de novo even if the arbitrator had

15    timely filed the award.  The right to the judgment itself had

16    not yet accrued because the court was required to give

17    plaintiff -- I think it's 21 days to ask for a trial de novo,

18    and if he asked for it, the court was required to give it to

19    him.  So there was no thorough right or entitlement to a

20    judgment at the time that the court dismissed without

21    prejudice.

22         It's also worth noting, Your Honor, that Virginia

23    courts have repeatedly stated that the current version of the

24    tolling statute consolidates and expands Virginia's prior

25    statute of limitations, and the prior statute of limitations

1   explicitly stated that a suit may be reinstated where arrest or

2   reversal is upon a ground which does not preclude a new cause

3   of action for the same cause.

4           So the prior statute was slightly more explicit in

5   the way that it was worded, and the current courts of Virginia

6   say that the new statute is an expansion and consolidation that

7   greatly expanded the circumstances, and defendant has located

8   no case where Virginia said that the new tolling statute in any

9   way circumscribed or limited a right that was previously

10  available.

11          THE COURT:  Any final thoughts on accrual, having

12  heard your opponent's arguments?

13          MR. PASSANNANTE:  Judge, I think I outlined them, and

14  I think that --

15          THE COURT:  I'm sorry, I was talking to her first.

16          MR. PASSANNANTE:  Oh, I'm sorry.  I thought you were

17  looking at me.  My apologies.

18          THE COURT:  No, that's all right.  I should have used

19  names, not just pointing my eyes at somebody.

20          I'm asking you, ma'am.  You heard our discussion on

21  accrual under Virginia law, and there are really three

22  different terms in play:  breach, default, and due.  So how do

23  you sort those out, in terms of Virginia not telling us when

24  the cause of action first accrues?

25          MS. HUEDEPOHL:  My first response, Your Honor, is

1  that Virginia hasn't given a clear answer, and under that

2  circumstance, there should not be an FDCPA violation because

3  plaintiff cannot prove his case.

4       Setting that aside for the moment, federal law

5  prohibited Capitol One from collecting from plaintiff prior to

6  charge-off.  Because of that, the statute -- Capitol One's full

7  right to accrue on the account wasn't caused by the breach.

8  That is caused by the default that is governed by the contract

9  and the company's charge-off.  Capitol One allowed itself the

10  contractual right to postpone declaring a breach to be a

11  default.

12       THE COURT:  What's the choice of law issue if your

13  opponent is right about breaching the law?

14       MS. HUEDEPOHL:  In that case, Your Honor, Oregon has

15  a firm policy favoring settlements, and it is defendant's

16  opinion, Your Honor, that if the slightest breach causes the

17  action to accrue in Virginia, regardless of what good faith

18  efforts the plaintiff may take thereafter to try and correct

19  it, there is no way to distinguish between a slight breach or a

20  material breach under the arguments that plaintiff have put

21  forth under Virginia.  Either your new promise is in writing or

22  it's not.

23       And so because Virginia law has such a clear

24  distinction about whether or not an additional agreement will

25  actually toll the statute of limitations, in Oregon, if a

slight breach is enough to do it and the creditor will be
forced to take every single debtor who made a payment one day
late one time three years ago into court, it is defendant's
opinion that the Oregon courts would not do that, and that does
not provide a fair opportunity to pursue a case where the
debtor has since been making payments, and if that is what the
Oregon courts decided, because it violates a public policy of
Oregon favoring settlement and favoring allowing debtors an
opportunity to recover from a small, insignificant mistake, and
because Oregon's six-year statute of limitations based on the
date of last payment would be materially different, Oregon's
six-year statute of limitations would apply, and the cause of
action accrued December 29th, 2007.

　　　　THE COURT:  Do you have Oregon authority for the idea
that the statute of limitations would not start running upon
initial breach?

　　　　MS. HUEDEPOHL:  Yes, Your Honor.  There's a statute.
If you give me one moment, I will be able to cite it to you.

　　　　It is Oregon Statute 12.090.  The later of the last
charge or the last payment establishes the date of accrual on a
contract.

　　　　THE COURT:  Mr. Passannante, final -- the final
discussion before I take a break here.  What's your view, then,
on the choice of law question?  Just tell me first, do you
agree that this sort of difference, if there is one, between

1   Virginia and Oregon law would trigger the application of Oregon
2   law under the choice-of-law provisions in this case?
3          MR. PASSANNANTE:  I don't, Your Honor.  I don't
4   think -- there's a difference between whether there's a breach
5   and when you bring a claim or the claim accrues.  For instance,
6   if you --
7          THE COURT:  Let me ask you this first.  Does Oregon
8   law make last payment the later of the -- does Oregon law make
9   it true that among various things that could happen, it's the
10  later of several, including one of them being the last payment,
11  starts the statute of limitations?
12         MR. PASSANNANTE:  Yes, Your Honor.  I don't disagree
13  with that.  I think Oregon's statute is pretty clear that
14  payments -- it's the last payment that starts the accrual -- it
15  starts the accrual over again.  So you could have an amount due
16  on the 1st, payment is made on the 30th, and then the clock
17  restarts, essentially, for each payment.
18         THE COURT:  So for your purposes, that really doesn't
19  matter much here because it just -- instead of maybe exceeding
20  the credit limit, it would be just the last payment being due
21  January of '07?
22         MR. PASSANNANTE:  The last payment due in January of
23  '07.  Each one of their statements demanded a payment to be
24  due, and then I believe it was March 31st, 2007, the account
25  was actually closed by Capitol One.  The letter where they

1   acknowledge receiving something from a third-party debt

2   management agency, it says your account is closed.  They did

3   the charge-off in August of 2008.

4          So, I mean, at a certain point, you know, I guess

5   there's a difference between breach and then waiting six months

6   to declare a default doesn't mean the statute is going to toll,

7   because Capitol One didn't have to wait that long.  They chose

8   to wait that long.  It doesn't trigger the statute of

9   limitations.

10          And then the filing of the lawsuit occurred a year

11  after the charge-off, and Ms. Huedepohl is arguing that it was

12  the lawsuit that actually started the statute of limitations.

13  And if the lawsuit started the claim accrual, how could you

14  file a lawsuit, because have you no claim until you file a

15  lawsuit.  So I don't understand how the lawsuit could be the

16  date that the claim accrues, because you can't file a lawsuit

17  unless you have a claim.  And the latest -- it's the 2008

18  charge-off, at the very latest, and I actually think it's when

19  he first missed his payments.  The fact that Capitol One chose

20  not to take action for a period of time doesn't mean that their

21  claim didn't accrue.  Those amounts were due when they were due

22  and the statements made them due.  They sent statements saying

23  they're past due.

24          THE COURT:  Thank you.

25          I'll take a brief break and I'll have more questions

1    perhaps after the break.

2            THE CLERK:  This court is in recess.

3            (A recess is then taken.)

4            THE COURT:  Here's what I'm going to do.  I'm going

5    to lay out some parameters for how I think the statute of

6    limitations question should be resolved, and by my

7    calculations, that puts us at somewhere between 59 and 61

8    months, depending on how you count things.  And I'm going to

9    give you an opportunity -- not now, but by letter brief shortly

10   afterwards, to crunch the numbers yourselves and tell me what

11   you come up with.

12           So parameter number one, I resolve as a matter of law

13   the question of whether this is a written contract or not by

14   finding that it is, in fact, a written contract.  I agree with

15   the analysis of Judge Smith, his opinion on the subject, and

16   with the analysis of the Virginia attorney general, and find

17   that it is a written contract, thereby triggering the five-year

18   statute of limitations under Virginia law, unless the conflict

19   of law rules requires Oregon's six-year statute of limitations.

20   I don't believe they do, but I'll entertain that later.

21           I also find that no rational jury could find

22   otherwise than that the payments under the third-party

23   management arrangement were made by an agent of plaintiff up

24   through the last payment.

25           And I further find as a matter of law that the first

1    lawsuit in this case ought to be treated like a lawsuit that

2    did not result in final resolution of the case, thereby also

3    tolling the statute of limitations.

4         With those principles and rulings in mind, here's how

5    I roughly believe the calculations go.  There are a couple of

6    spots where I'm only making approximations, and you'll have

7    your opportunity in your letter brief to me to be more precise

8    than I am right now.  So don't fall down in panic when you hear

9    dates that don't match anything you brief.

10        So I believe that the way this works, then, is that

11   the statute of limitations would start running after the first

12   nonpayment.  And that's a specific ruling on a relatively minor

13   issue, but it may become more important later, so let me

14   explain it.

15        I don't believe that the account balance being

16   exceeded -- exceeding the credit limit fits the statutory

17   definition of when a cause of action accrues very well, and

18   therefore I think it has to come with the first nonpayment.

19   Now, the undisputed record on the first nonpayment is that it

20   occurred by a payment of $108.60 on January 31st of 2007.  And

21   so obviously that's not when the account is in any sort of

22   arrears.  And I'm only sort of just estimating of when it, in

23   fact, is in some kind of default status or at least potential

24   default status, and I'm pulling out March 1st of '07.

25        So you'll be able to explain to me whether you think

1   it's actually earlier than that or later than that that the

2   account is in arrears and the statute -- the cause of action

3   accrues and the statute runs.

4           What I am doing, at least with this initial

5   calculation, is giving plaintiff the benefit of the doubt by

6   starting the statute of limitations when the account holder has

7   failed to make an appropriate payment, and not giving defendant

8   the additional up to six months they might have to do nothing

9   about that and not trigger the statute.

10          So I am assuming, in other words, that at some point,

11  when the first nonpayment occurs and the party is in breach of

12  the contract by nonpayment, that the statute starts to run.

13  For my purposes, I've roughly called that March 1st of 2007.

14          The statute would run until the next major date,

15  which is the third-party arrangement, which begins sometime in

16  April of 2007.  Again, to give plaintiff the benefit of the

17  doubt, I'm calling that April 30th, 2007, although I'm aware

18  that the letter may, in fact, be half a month earlier.

19          So that's approximately two months in which the

20  statute ran until it quit running, 1.5 to two months, and then

21  it quit running during that arrangement until after the last

22  payment under the third-party plan.  And again, under the same

23  sort of estimation, since that payment was December 29th of

24  '07, I'm starting the clock again February 1 of 2008.

25          And you can give me your reasons why you think that's

1    wrong.

2            Approximately February 1 of 2008, about a month after

3    the last payment under the third-party plan, the clock starts

4    ticking again, and it runs until the first lawsuit is filed,

5    August 6th of 2009.  And that's approximately 18 months that

6    the clock runs.

7            And then it stops running between the filing of the

8    first lawsuit in August 6th of 2009 and the dismissal of the

9    first lawsuit on March 4th, 2010.

10           And then it runs from March 4th, 2010, to the filing

11   of the second lawsuit -- which sort of ends our analysis -- on

12   July 19th, 2013, a period of approximately 41 months.  So

13   that's either 59.5 or 60, or 60.5 or 61 months, depending on

14   how you count things.

15           I am not sure today how I would rule on the

16   interregnums that would occur whenever Capitol One has an

17   account holder, this plaintiff, in breach, but doesn't take

18   action.  I've heard your arguments.  I'm going to take a second

19   look at it.  I'm not sure how that would work.

20           And, of course, if I went Capitol One's way on that,

21   then I wouldn't need your calculations.  But since I'm not sure

22   how I would do that, and I may go plaintiff's way on that

23   argument, then I need to know your precise calculations, since

24   we're right around 60 months.

25           And I'm also not sure, although I'm dubious, that the

1    choice of law issue would affect the outcome in any way.   I

2    think I am slightly more inclined to credit plaintiff's

3    argument on the choice of law issue than the -- that the Oregon

4    policy in favor of settlements doesn't really help us answer

5    this more precise question about which statute of limitations

6    ought to control in this case, Virginia's or Oregon's.   And

7    without any real clear violation of a principle of Oregon law

8    in place, I don't think I would revert to the six-year, the

9    72-month statute of limitations in Oregon.

10             But I'll take some time to think those over while I

11   find out whether that's necessary, since I am confident that

12   this is a written contract with a minimum five-year statute of

13   limitations, and it may well be that we're under those five

14   years under the decisions I am making today.

15             So to be clear, I am deciding that it is a written

16   contract, I am deciding that it's a five-year statute of

17   limitations, I am deciding that it's tolled by the period of

18   time in which we have this third-party arrangement, and I am

19   deciding that it's tolled by the first lawsuit, from filing to

20   dismissal.

21             Can you give me a letter brief on your analysis of

22   the possibility that we're under that five-year statute of

23   limitations time period even without -- or even giving

24   plaintiff the benefit of the doubt on the sort of inaction

25   period that Capitol One claims it has the right to, within,

1    say, a week, just run these numbers and tell me where you think
2    we are?
3              MS. HUEDEPOHL:  Yes, Your Honor.
4              MR. PASSANNANTE:  Yes, Your Honor.
5              THE COURT:  So a week from today, no more than a
6    five-page letter brief.  I don't need you to reanalyze or
7    reintroduce the facts.  Just tell me what the precise dates are
8    for starts and stops, the ones I've discussed, and why you
9    think those are the right dates.
10             Obviously, if I grant summary judgment to Capitol One
11   on this question, such that it didn't violate the FDCPA for
12   them to pursue the debt, then it would erase the need to
13   resolve the other class questions in the case.  I'll wait to do
14   that when I decide whether that's the case or not.
15             Anything further from plaintiffs today?
16             MR. PASSANNANTE:  Nothing further, Your Honor.
17             The only thing -- I guess one thing.  There's an
18   overstatement claim as well in the brief that the Court hasn't
19   addressed, about overstating the amount of the debt.  Are you
20   not resolving that today?
21             THE COURT:  I'm not going to resolve it today.  I'm
22   aware of it.
23             MR. PASSANNANTE:  All right.  That was my
24   understanding, but I wanted to check.
25             THE COURT:  From the defense?

1    MS. HUEDEPOHL:  Further clarification as well, Your

2 Honor.  Has the Court determined -- has the Court made a

3 decision on the tolling as it relates to the debt verification

4 letters or is it simply reserving that until after the letter

5 briefs are submitted?

6    THE COURT:  Whether the two letters that were sent in

7 actually tolled?

8    MS. HUEDEPOHL:  Yes.  The plaintiff sent letters that

9 prevented Capitol One's attorney from being able to file a

10 lawsuit, whether that tolled the statute of limitations.

11    THE COURT:  Thank you for bringing that up.  I'm of

12 the view that at least one of them does toll.  They each tolled

13 for about a month, right?

14    MS. HUEDEPOHL:  No, Your Honor.  Unfortunately, one

15 tolled for about 30 days, as plaintiff recalls.  The other

16 tolled for approximately 18 months, due to an error that

17 happened when the verification request was received by

18 defendants, and there is a bona fide error defense that's

19 preserved.

20    THE COURT:  I guess my concern there is what I

21 haven't resolved -- I'm persuaded that in the abstract those

22 letters do operate as tolling.  In this case I'm not persuaded

23 that -- at least I don't know the answer as to whether that can

24 ever be done twice.  If I give you a lawsuit that has within it

25 a verification request and that tolling, how many times can

1   that happen?  I'm not sure of the answer to that.

2          Do you have any thoughts on that?

3          MS. HUEDEPOHL:  Yes, Your Honor.  Plaintiff in his

4   brief suggested that the reason he sent a second verification

5   request was because the debt collector had changed and he

6   wanted verification that this second debt collector defendant

7   in this case in fact had a right to pursue him for the debt

8   that was -- that it undertook to collect.  And when it did

9   that, defendant was required to respond.

10         Nothing about the fact that this is plaintiff's

11  second debt verification request changes the effect of the law

12  that defendant was required to provide him with.  At a minimum,

13  Your Honor, I am aware of no case that says a second debt

14  collector is not required to verify a debt.  And, Your Honor,

15  given --

16         THE COURT:  It can go either way, right?

17         MS. HUEDEPOHL:  Correct.  And, Your Honor, given the

18  nature of the FDCPA, I think there's a real concern in

19  requiring debt collectors to take the risk.

20         THE COURT:  And why would you get more than 30 days

21  on the second one?

22         MS. HUEDEPOHL:  In this particular instance, Your

23  Honor, it's the length of time it actually took for the debt

24  collector to respond to the request.  There's no statutory time

25  period.  The FDCPA doesn't have a statute of ultimate repose.

1   It does not have any time period in which a verification

2   request must be provided.  It typically does happen faster than

3   what happened in this case, but it's not required to happen at

4   a certain speed, and in this case the delay was solely

5   attributable to an error that occurred when plaintiff's

6   verification request was received.  And so -- but to the

7   extent -- that is a bona fide error.  To the extent that

8   defendant would have been entitled to tolling because it was

9   required to refrain from filing a lawsuit until it had

10  responded, to the extent it loses benefit of that tolling

11  because it took so long, defendant has asserted a bona fide

12  error defense, that despite procedures that were designed to

13  get responses to verification requests quickly, in this case

14  those procedures failed.

15          THE COURT:  Thank you.

16          I'm not going to resolve this question, but of course

17  a month here or there may end up mattering.  Do you wish to be

18  heard further on just this question of the impact on the

19  statute of limitations of the two verification letters?

20          MR. PASSANNANTE:  Judge --

21          THE COURT:  I should tell you, just to assure you,

22  although I failed bring it up in our oral argument, I am aware

23  of it.  I have reviewed what you briefed.

24          MR. PASSANNANTE:  Okay.  I think we've got the same

25  position.  The verification letter is merely to verify.  It

1   doesn't constitute tolling under Virginia statute because it's

2   not an impediment to suit by Capitol One.  It's not even an

3   impediment to suit by a particular law firm.

4        THE COURT:  You disagree that they are forbidden from

5   suing until they verify?

6        MR. PASSANNANTE:  I think there's a question about

7   forbidden and whether there's a claim that can be asserted.  I

8   don't think that if they had filed, that that lawsuit would not

9   get dismissed.  They might violate the FDCPA, but the lawsuit

10  itself would not get dismissed and say you can't bring this

11  claim because I asked for verification.  Defendant's own

12  testimony --

13       THE COURT:  Well, couldn't the defendant in a case

14  like that, say, move to dismiss for failure to grant me a

15  verification before filing?

16       MR. PASSANNANTE:  I don't think that's one of the

17  rights granted by the statute.  The statute allows for damages

18  and for violation of the act, but it doesn't preclude bringing

19  a state court claim from an otherwise valid debt.  It gives

20  rise to liability of the debt collector.

21       The question then on the filing of the lawsuit, this

22  particular debt collector is not filing on any assigned claim,

23  it's whether or not Capitol One has a right to bring a suit or

24  not.  In this particular case, Patenaude & Felix -- it's not

25  Patenaude & Felix's claim, it's Capitol One's claim.  It's

```
 1    whether or not they were prevented and whether or not they had
 2    the right to bring the claim.  I'm not aware of any FDCPA
 3    holding that says, well, the debt collector attorney failed to
 4    issue verification prior to filing the lawsuit, and the
 5    necessary remedy for that is dismissal of the lawsuit,
 6    particularly Capitol One's lawsuit, who is not covered by the
 7    FDCPA.
 8                THE COURT:  All right.  Thank you.
 9                I'll take that under advisement.  I look forward to
10    hearing -- or to seeing your calculations on these other
11    matters I've raised.
12                We'll be in recess.
13                MR. PASSANNANTE:  Thank you, Judge.
14                MR. EIDENBERG:  Thank you.
15                THE CLERK:  This court is adjourned.
16                (Proceedings concluded.)
17
18
19
20
21
22
23
24
25
```

--oOo--


        I certify, by signing below, that the foregoing is a

correct transcript of the record of proceedings in the

above-entitled cause.  A transcript without an original

signature or conformed signature is not certified.



*/s/Bonita J. Shumway*                    *2/4/2016*

BONITA J. SHUMWAY, CSR, RMR, CRR          DATE
Official Court Reporter

**$**

**$108.60 [1]** 39/20
**$55 [3]** 17/23 22/21 31/6

**'**

**'06 [1]** 10/7
**'07 [8]** 11/8 11/17 11/17 15/7 36/21 36/23 39/24 40/24
**'09 [2]** 9/20 26/3

**-**

**--o0o [1]** 49/2

**/**

**/s/Bonita [1]** 49/9

**1**

**1.5 [1]** 40/20
**1000 [1]** 2/18
**1001 [1]** 2/8
**11 [1]** 10/4
**12.090 [1]** 35/19
**1250 [1]** 2/8
**18 [3]** 1/7 41/5 44/16
**180 [2]** 26/15 26/17
**19 [1]** 29/15
**1999 [1]** 29/25
**19th [1]** 41/12
**1st [4]** 24/22 36/16 39/24 40/13

**2**

**2/4/2016 [1]** 49/9
**2007 [7]** 17/8 35/13 36/24 39/20 40/13 40/16 40/17
**2008 [7]** 9/2 10/4 31/8 37/3 37/17 40/24 41/2
**2009 [6]** 9/15 9/19 9/23 10/2 41/5 41/8
**2010 [2]** 41/9 41/10
**2013 [1]** 41/12
**2015 [1]** 1/7
**2016 [1]** 49/9
**205 [1]** 30/8
**21 [1]** 32/17
**230-M [1]** 2/4
**249 [1]** 9/8
**259 [1]** 29/25
**29th [2]** 35/13 40/23

**3**

**30 [2]** 44/15 45/20
**3000 [1]** 2/4
**301 [1]** 2/18
**30th [2]** 36/16 40/17
**31 [1]** 11/17
**31st [2]** 36/24 39/20
**326-8188 [1]** 2/19
**3:14-cv-00921-MO [1]** 1/5
**3:14-cv-921-MO [1]** 3/3
**3rd [1]** 10/7

**4**

**41 [1]** 41/12
**43 [1]** 30/9
**43rd [1]** 30/8
**4th [2]** 41/9 41/10

**5**

**503 [1]** 2/19
**54 [1]** 32/8
**59 [1]** 38/7
**59.5 [1]** 41/13
**5th [1]** 9/23

**6**

**60 [2]** 41/13 41/24
**60.5 [1]** 41/13
**61 [2]** 38/7 41/13
**6th [4]** 9/20 26/3 41/5 41/8

**7**

**72-month [1]** 42/9

**8**

**8.01-249 [1]** 9/8
**800 [1]** 2/12
**8188 [1]** 2/19

**9**

**97124 [1]** 2/5
**97204 [2]** 2/8 2/18
**97258 [1]** 2/13

**A**

**A.P.C [2]** 1/7 3/4
**able [4]** 19/1 35/18 39/25 44/9
**about [29]** 4/14 4/8 5/8 5/21 7/23 9/6 19/2 21/16 24/9 24/16 24/21 24/23 25/9 25/11 25/18 26/1 27/2 31/18 31/20 34/13 34/24 40/9 41/2 42/5 43/19 44/13 44/15 45/10 47/6
**above [1]** 49/6
**above-entitled [1]** 49/6
**absence [1]** 18/12
**absolute [1]** 32/14
**abstract [2]** 23/24 44/21
**accident [1]** 24/22
**accidents [1]** 25/3
**according [1]** 13/16
**account [31]** 9/7 9/7 10/7 10/13 11/1 11/2 12/3 13/23 14/23 15/2 15/14 15/25 19/16 19/19 20/8 20/19 21/11 21/12 21/15 30/7 30/10 30/15 30/25 34/7 36/24 37/2 39/15 39/21 40/2 40/6 41/17
**accrual [9]** 8/8 9/9 29/16 33/11 33/21 35/20 36/14 36/15 37/13
**accrue [4]** 22/1 34/7 34/17 37/21
**accrued [4]** 31/13 31/14 32/16 35/13
**accrues [4]** 19/11 19/20 22/1 22/2 22/2 23/1 23/2 23/2 29/10 29/11 29/16 29/24 33/24 36/5 37/16 39/17 40/3
**acknowledge [3]** 4/10 23/13 37/1
**acknowledges [2]** 7/15 23/18
**act [2]** 13/7 47/18
**acted [1]** 17/5
**action [17]** 8/7 8/8 15/20 25/10 26/15 28/20 29/16 29/23 31/12 33/3 33/24 34/17 35/13 37/20 39/17 40/2 41/18
**acts [1]** 15/19
**actual [1]** 14/17
**actually [17]** 4/2 6/25 8/24 8/25 11/3 13/7 23/17 26/16 26/23 27/7 35/24 25 36/25 37/12 37/18 40/1 44/7 45/23
**add [1]** 3/14
**additional [2]** 34/24 40/8
**address [1]** 29/16
**addressed [3]** 3/21 9/11 43/19
**adjourned [1]** 48/15
**advisement [1]** 48/9
**affect [1]** 42/1
**after [11]** 3/25 5/14 24/18 26/2 26/16 37/11 38/1 39/11 40/21 41/2 44/4
**afterwards [1]** 38/10
**again [14]** 14/14 16/15 20/13 23/9 23/25 24/8 24/9 24/18 29/11 36/15 40/16 40/22 40/24 41/4
**against [7]** 8/7 28/19
**agency [7]** 11/18 18/6 18/14 23/15 24/6 31/5 37/2
**agent [6]** 15/19 15/21 16/25 17/5 17/11 38/23

**ago [1]** 35/3
**agree [14]** 4/4 5/20 6/7 7/24 10/6 16/10 21/11 22/10 22/24 23/6 23/24 27/21 35/25 38/14
**agreed [2]** 21/24 22/11
**agreement [22]** 10/11 17/6 17/15 17/17 19/25 19/25 20/16 21/5 21/9 21/14 21/15 21/17 21/17 21/19 22/10 22/15 22/16 22/18 23/16 23/23 31/5 34/24 23/25
**agrees [2]** 23/25
**ahead [1]** 29/20
**all [16]** 1/3 3/10 7/1 7/12 7/13 10/22 12/8 16/24 19/2 19/5 19/15 24/17 32/8 33/18 43/23 48/8
**allow [1]** 21/11
**allowed [1]** 34/9
**allowing [2]** 8/17 35/8
**allows [2]** 30/23 47/17
**along [1]** 7/17
**already [1]** 3/15
**also [12]** 3/13 6/7 9/6 12/17 13/20 22/5 22/6 32/13 32/22 38/21 39/2 41/25
**although [4]** 4/7 40/17 41/25 46/22
**am [13]** 39/8 40/4 40/10 41/15 42/2 42/11 42/14 42/15 42/16 42/17 42/18 45/13 46/22
**among [1]** 36/9
**amount [6]** 20/18 21/18 31/4 31/13 36/15 43/19
**amounts [1]** 37/21
**analogies [1]** 25/3
**analysis [4]** 18/15 38/16 41/11 42/21
**anonymous [3]** 15/14 15/23 16/4
**answer [4]** 34/1 42/4 44/23 45/1
**anticipatory [1]** 16/22
**any [24]** 4/12 4/25 5/15 11/7 13/17 14/22 17/5 17/7 17/8 17/15 18/3 20/18 20/19 21/24 23/12 33/8 33/11 39/21 42/1 42/7 45/2 46/1 47/22 48/2
**anybody [1]** 15/15
**anymore [2]** 16/17 32/2
**anything [4]** 3/16 24/1 39/9 43/15
**apologies [4]** 10/5 25/4 29/19 33/17
**apologize [1]** 9/25
**APPEARANCES [1]** 2/2
**applicable [1]** 21/12
**application [4]** 3/22 4/16 5/16 36/1
**applied [3]** 3/25 4/18 5/13
**applies [2]** 8/8 27/4
**apply [5]** 8/5 11/5 14/25 30/4 35/12
**appropriate [1]** 40/7
**approves [1]** 8/13
**approximately [5]** 40/19 41/2 41/5 41/12 44/16
**approximations [1]** 39/6
**April [3]** 11/17 40/16 40/17
**April 30th [1]** 40/17
**arbitration [4]** 25/23 26/23 26/24 27/11
**arbitrator [2]** 32/11 32/14
**are [21]** 4/9 5/22 6/16 7/2 9/17 10/20 10/21 14/12 18/18 19/15 24/12 30/22 32/8 33/21 39/5 43/2 43/7 43/9 43/19 44/5 47/4
**arguing [2]** 15/10 37/11
**argument [9]** 1/15 3/3 30/3 30/11 30/14 30/15 41/23 42/3 42/3 46/22
**arguments [4]** 3/16 33/12 34/20 41/18
**around [3]** 18/15 24/7 41/24
**arrangement [6]** 6/2 11/8 38/23 40/15 40/21 42/18
**arrears [2]** 39/22 40/2
**arrest [1]** 33/1
**as [30]** 3/9 3/23 4/5 5/11 5/12 5/18 6/2 6/22 7/18 7/23 9/7 16/11 17/8 18/24 20/5 20/8 20/8 20/24 21/9 21/14 21/23

## A

**as...** [9] 29/17 38/12 38/25 43/18 44/1
44/3 44/15 44/22 44/23
**aside** [1] 34/4
**ask** [6] 18/3 25/6 25/8 29/17 32/17 36/7
**asked** [2] 32/18 47/11
**asking** [1] 33/20
**asks** [1] 31/4
**asserted** [2] 46/11 47/7
**assess** [1] 31/10
**assigned** [1] 47/22
**assume** [3] 7/1 7/4 22/19
**assuming** [3] 7/23 22/22 40/10
**assure** [1] 46/21
**at** [35] 3/13 4/5 5/20 6/9 6/12 11/11
11/13 12/1 12/2 12/8 13/7 13/8 15/10
16/23 17/14 19/14 24/17 24/17 26/2
28/10 31/3 32/20 33/17 33/19 37/4
37/18 38/7 39/23 40/4 40/10 41/19
44/12 44/23 45/12 46/3
**attempting** [1] 14/24
**attorney** [3] 38/16 44/9 48/3
**attributable** [1] 46/5
**August** [10] 1/7 9/20 9/23 10/2 10/4 26/3
31/8 37/3 41/5 41/8
**August 11** [1] 10/4
**August 5th** [1] 9/23
**August 6th** [4] 9/20 26/3 41/5 41/8
**authority** [5] 14/17 16/2 29/1 29/6 35/14
**automatic** [1] 10/15
**available** [2] 5/14 33/10
**Ave** [1] 2/18
**Avenue** [1] 2/8
**award** [3] 32/11 32/12 32/15
**aware** [8] 9/4 16/21 17/14 40/17 43/22
45/13 46/22 48/2

## B

**back** [4] 4/15 6/20 29/12 30/13
**backwards** [2] 10/3 28/25
**balance** [14] 10/7 10/16 10/23 10/24
11/11 11/14 12/6 19/13 19/17 21/11
21/12 31/7 31/11 39/15
**balances** [1] 13/8
**bare** [1] 5/21
**based** [2] 10/25 35/10
**basic** [4] 6/6 6/15 6/17 11/10
**basically** [1] 28/1
**basis** [1] 12/18
**be** [45] 4/4 4/13 5/10 6/14 6/15 6/17
6/21 9/1 9/21 10/14 10/14 10/22 12/20
14/7 16/9 20/20 23/11 24/20 27/1 28/22
30/25 31/4 31/17 32/1 33/1 34/2 34/10
35/1 35/11 35/18 36/20 36/23 37/15
38/6 39/1 39/7 39/25 40/18 42/13 42/15
44/24 46/2 46/17 47/7 48/12
**because** [35] 5/13 6/15 6/17 8/5 13/18
13/20 18/24 20/25 21/23 23/11 24/21
24/23 26/11 27/5 27/10 27/19 28/16
31/10 31/12 32/1 32/16 34/2 34/6 34/23
35/7 35/10 36/19 37/7 37/14 37/16 45/5
46/8 46/11 47/1 47/11
**become** [2] 6/22 39/13
**been** [5] 10/25 12/11 13/11 35/6 46/8
**before** [6] 1/17 11/3 11/7 18/25 35/23
47/15
**begin** [3] 8/21 10/18 31/12
**begins** [2] 30/10 40/15
**begun** [1] 12/10
**behalf** [5] 1/3 3/7 3/8 15/19 17/6
**being** [13] 3/10 5/2 12/24 14/23 17/18
18/18 19/23 20/5 26/4 36/10 36/20
39/15 44/9
**believe** [12] 4/2 4/11 10/1 15/25 17/12

**below** [1] 49/4
**benefit** [4] 40/5 40/16 42/24 46/10
**best** [7] 3/21 14/17 29/1 29/6 30/11
30/14 30/15
**between** [13] 11/16 25/10 27/25 28/4
29/2 30/2 31/21 34/19 35/25 36/4 37/5
38/7 41/7
**bit** [4] 15/10 18/16 26/18 28/25
**boat** [1] 18/24
**bona** [3] 44/18 46/7 46/11
**Bonita** [3] 2/17 49/9 49/10
**borrower** [3] 14/9 16/13 16/14
**Both** [1] 17/4
**box** [3] 3/22 4/14
**breach** [47] 8/14 8/15 8/17 8/22 8/24 9/5
9/13 12/1 19/22 19/23 19/24 20/1 20/3
20/5 20/7 20/25 20/25 21/15 21/17
21/22 21/25 22/2 22/8 22/9 22/12 22/13
23/2 23/3 23/5 23/23 29/2 29/11 30/22
30/25 31/14 33/22 34/7 34/10 34/16
34/19 34/20 35/1 35/16 36/4 37/5 40/11
41/17
**breached** [4] 19/20 21/19 29/24 30/16
**breaching** [1] 34/13
**break** [3] 35/23 37/25 38/1
**Bret** [2] 2/4 3/7
**BRIAN** [2] 1/3 3/3
**brief** [11] 3/20 12/19 30/7 37/25 38/9
39/7 39/9 42/21 43/6 43/18 45/4
**briefed** [2] 5/14 20/8
**briefing** [6] 3/15 7/24 17/19 17/22 17/24
29/9
**briefs** [1] 44/5
**bring** [7] 8/6 24/23 36/5 46/22 47/10
47/23 48/2
**bringing** [2] 44/11 47/18
**Broer** [1] 2/7
**but** [39] 3/23 6/1 6/14 6/23 10/1 10/15
11/1 12/24 14/4 16/10 16/15 16/17
17/23 19/16 19/22 21/20 22/6 25/16
25/23 25/24 28/5 28/14 30/16 30/18
30/22 30/25 31/25 38/9 38/20 39/13
41/17 41/21 42/10 43/24 46/3 46/6
46/16 47/9 47/18

## C

**calculation** [1] 40/5
**calculations** [5] 38/7 39/5 41/21 41/23
48/10
**call** [6] 4/14 6/2 7/9 11/11 18/18 25/9
**called** [3] 4/17 11/14 40/13
**calling** [1] 40/17
**calls** [3] 19/25 19/25 20/17
**came** [2] 15/15 18/7
**can** [16] 3/5 4/4 4/13 4/13 4/14 4/14
4/15 5/10 10/14 10/22 40/25 42/21
44/23 44/25 45/16 47/7
**can't** [4] 22/25 31/7 37/16 47/10
**cannot** [4] 4/16 6/17 20/20 34/3
**capable** [1] 20/5
**Capital** [1] 20/2
**Capitol** [55]
**capped** [1] 13/7
**car** [4] 24/21 24/22 25/1 25/3
**card** [8] 4/1 4/1 4/2 4/18 5/17 7/14 7/15
22/10
**cardholder** [2] 21/24 22/20
**cards** [1] 10/20
**care** [1] 15/15
**CARLOS** [1] 1/3 3/3 3/24 21/23 23/11
23/19
**Carlos's** [1] 13/23
**case** [43] 1/5 3/3 3/12 6/9 8/8 9/1 12/21

23/15 26/14 36/24 38/20 39/5 39/7
39/11
**cause** [10] 29/16 29/23 31/12 33/2 33/3
33/24 35/12 39/17 40/2 49/6
**caused** [2] 34/7 34/8
**causes** [1] 34/16
**certain** [5] 10/21 10/24 12/4 37/4 46/4
**certainly** [1] 24/21
**certified** [1] 49/7
**certify** [1] 49/4
**change** [1] 3/23
**changed** [1] 45/5
**changes** [1] 45/11
**character** [1] 27/9
**charge** [16] 9/1 9/14 9/24 12/18 12/19
13/8 13/17 19/12 30/20 31/8 34/6 34/9
35/20 37/3 37/11 37/18
**charge-off** [12] 9/1 9/14 9/24 12/18
12/19 13/17 31/8 34/6 34/9 37/3 37/11
37/18
**charged** [1] 17/8
**charges** [1] 22/6
**charging** [1] 10/25
**check** [2] 4/14 43/24
**check-the-box** [1] 4/14
**checks** [1] 17/23
**choice** [5] 34/12 35/24 36/2 42/1 42/3
**choice-of-law** [1] 36/2
**chose** [3] 27/14 37/7 37/19
**circumscribed** [1] 33/9
**circumstance** [1] 34/2
**circumstances** [7] 4/12 5/18 7/10 10/21
10/22 16/21 33/7
**cite** [4] 14/5 14/7 30/7 35/18
**cited** [2] 12/18 14/22
**claim** [27] 19/11 21/25 22/1 23/1 23/2
24/23 24/25 27/14 28/19 29/10 29/11
30/7 36/5 36/5 37/13 37/14 37/16 37/17
37/21 43/18 47/7 47/11 47/19 47/22
47/25 47/25 48/2
**claims** [1] 42/25
**clarification** [1] 44/1
**class** [1] 43/13
**clear** [6] 15/11 34/1 34/23 36/13 42/7
42/15
**clearer** [1] 23/20
**clearly** [1] 15/13
**clicked** [1] 3/22
**clock** [13] 13/16 18/19 19/15 23/8 23/23
24/7 24/11 24/13 24/18 36/16 40/24
41/3 41/6
**close** [1] 3/13
**closed** [2] 36/25 37/2
**closer** [1] 32/3
**closure** [2] 11/1 20/9
**collect** [2] 14/24 45/8
**collected** [1] 10/14
**collecting** [1] 34/5
**collector** [5] 45/5 45/6 45/14 45/24
47/20 47/22 48/3
**collectors** [1] 45/19
**Columbia** [2] 2/12 30/8
**come** [5] 12/8 12/9 18/3 38/11 39/18
**comes** [2] 19/16 23/3
**company** [2] 30/8 30/16
**company's** [1] 34/9
**complicated** [1] 25/2
**comprise** [1] 7/17
**concern** [2] 44/20 45/18
**concluded** [1] 48/16

## C

**concurrent** [1] 12/19
**confident** [1] 42/11
**conflict** [1] 38/18
**conformed** [1] 49/7
**connection** [1] 4/8
**considered** [1] 10/14
**consolidates** [1] 32/24
**consolidation** [1] 33/6
**constitute** [3] 4/16 4/17 47/1
**constitutes** [3] 6/11 22/8 23/15
**Consumers** [1] 30/8
**contend** [3] 6/10 18/19 25/14
**contending** [1] 19/15
**contention** [5] 4/15 7/1 8/20 9/12 19/10
**continue** [1] 12/3
**contract** [38] 3/12 3/17 4/1 4/3 4/9 4/13
4/17 4/19 5/11 5/12 5/19 5/21 6/11 6/19
6/23 6/25 7/16 7/17 7/19 8/24 9/13
10/13 12/1 20/2 20/4 20/6 20/10 29/2
29/12 30/23 34/8 35/21 38/13 38/14
38/17 40/12 42/12 42/16
**contracts** [2] 4/9 7/2
**contractual** [3] 9/4 29/4 34/10
**control** [1] 42/6
**controls** [2] 7/25 26/12
**correct** [13] 4/23 5/3 5/5 8/2 25/13 25/17
26/7 28/2 28/6 28/10 34/18 45/17 49/5
**could** [17] 12/23 12/25 13/10 16/6 16/19
16/22 18/3 18/10 23/11 25/24 26/1 29/8
36/9 36/15 37/13 37/15 38/21
**couldn't** [7] 4/25 12/25 13/18 16/18
22/19 22/22 47/13
**counsel** [2] 3/5 5/10
**count** [2] 38/8 41/14
**couple** [1] 39/5
**course** [3] 7/22 41/20 46/16
**court** [19] 1/1 1/18 2/17 6/24 9/3 15/21
27/16 28/17 32/16 32/18 32/20 35/3
38/2 43/18 44/2 44/2 47/19 48/15 49/11
**Courthouse** [1] 2/17
**courts** [8] 9/10 14/2 14/8 16/9 32/23
33/5 35/4 35/7
**covered** [1] 48/6
**credit** [25] 3/24 5/17 7/14 7/15 10/8
10/12 10/13 10/20 19/17 19/25 20/1
20/9 20/21 20/19 21/10 21/10 21/13
21/18 21/23 21/24 22/8 30/16 36/20
39/16 42/2
**creditor** [10] 8/14 8/16 10/22 11/2 13/8
14/24 16/21 16/22 31/18 35/1
**critical** [3] 8/10 8/11 8/15
**CRR** [2] 2/17 49/10
**crunch** [1] 38/10
**CSR** [2] 2/17 49/10
**curious** [1] 30/14
**current** [2] 32/23 33/5
**currently** [1] 5/22
**cv** [2] 1/5 3/3

## D

**damages** [1] 47/17
**date** [15] 9/2 9/9 9/13 9/14 9/15 9/19
9/24 10/1 10/18 11/12 35/11 35/20
37/16 40/14 49/10
**dates** [4] 9/17 39/9 43/7 43/9
**day** [2] 28/17 35/2
**days** [5] 26/15 26/17 32/17 44/15 45/20
**de** [2] 32/14 32/17
**deal** [1] 27/6
**dealing** [1] 24/11
**deals** [1] 20/2
**debt** [29] 11/18 12/20 14/1 14/2 15/2
15/3 16/22 17/5 18/13 23/7 23/14 26/4

31/5 37/1 43/13 43/19 44/3 45/5 45/6
45/7 45/11 45/13 45/14 45/19 45/23
47/19 47/20 47/22 48/3
**debtor** [10] 6/19 7/14 8/16 8/18 10/23
11/2 15/21 16/21 35/2 35/6
**debtor's** [1] 15/21
**debtors** [1] 35/8
**December** [3] 10/14 35/13 40/23
**December 29th** [2] 35/13 40/23
**decide** [6] 19/1 21/21 24/9 24/15 24/22
43/14
**decided** [6] 5/10 16/9 22/20 24/25 28/16
35/7
**decides** [2] 22/1 22/12
**deciding** [5] 23/4 42/15 42/16 42/17
42/19
**decision** [17] 12/12 12/20 25/22 25/23
26/11 26/21 27/1 27/11 27/12 27/18
27/22 28/5 28/8 28/9 28/12 28/15 44/3
**decisions** [2] 42/14
**declaration** [1] 3/24
**declare** [14] 12/5 20/15 21/1 21/5 21/20
21/21 22/16 22/20 23/4 29/5 31/7 31/10
31/13 37/6
**declared** [1] 31/8
**declares** [3] 8/25 8/25 20/17
**declaring** [1] 34/10
**default** [31] 9/1 9/14 10/15 10/15 19/11
20/13 20/14 20/15 20/17 21/1 21/2 21/5
21/6 21/7 21/20 21/21 21/24 22/8
22/21 23/4 29/5 30/17 30/19 30/23
39/24
**defend** [1] 8/7
**defendant** [12] 1/8 2/11 9/4 14/22 33/7
40/7 45/6 45/9 45/12 46/8 46/11 47/13
**defendant's** [5] 9/12 18/22 34/15 35/3
47/11
**defendants** [3] 3/9 5/8 44/18
**defense** [4] 8/3 43/25 44/18 46/12
**definition** [1] 39/17
**delay** [1] 46/4
**demand** [6] 10/19 11/2 11/4 11/12 12/12
12/24 13/4 13/17
**demanded** [3] 9/16 10/22 36/23
**demanding** [1] 12/16
**denial** [1] 17/20
**denied** [1] 17/17
**denying** [1] 16/22
**dependent** [1] 16/10
**depending** [4] 7/10 14/12 38/8 41/13
**deposition** [2] 17/13 17/14
**designed** [2] 28/12 46/12
**despite** [1] 46/12
**determination** [1] 12/2
**determine** [3] 6/23 9/5 20/3
**determined** [2] 6/18 44/2
**did** [9] 9/2 13/24 17/23 18/13 28/19 31/9
37/2 39/2 45/8
**didn't** [5] 11/23 12/8 28/21 31/20 37/7
37/21 43/11
**difference** [8] 8/5 8/10 8/11 8/15 35/25
36/4 37/5
**differences** [1] 30/2
**different** [9] 4/12 7/8 20/24 21/16 24/12
26/13 26/18 33/22 35/11
**disagree** [5] 9/7 22 36/12 47/4
**disclosed** [1] 3/25
**disclosure** [1] 17/24
**discretion** [5] 20/15 20/24 21/4 21/7
21/8
**discretionary** [1] 20/7
**discuss** [2] 3/11 30/1
**discussed** [1] 43/8
**discussion** [3] 29/1 33/20 35/23

**dismiss** [2] 28/15 47/14
**dismissal** [8] 25/20 25/22 26/25 27/12
27/25 41/8 42/20 48/5
**dismissed** [6] 26/21 27/23 32/7 32/20
47/9 47/10
**dismissing** [1] 32/6
**dispute** [3] 4/22 15/11 18/11
**disputed** [5] 6/3 6/5 6/7 6/16 6/22
**disputes** [1] 5/23
**distinction** [2] 11/4 34/24
**distinguish** [1] 34/19
**DISTRICT** [4] 1/1 1/2 1/18 2/17
**do** [26] 4/4 6/7 19/1 22/3 22/7 22/22
23/6 24/9 24/15 24/16 28/21 30/3 31/18
33/22 35/1 35/4 35/14 35/24 38/4 38/20
40/8 41/22 43/13 44/22 45/2 46/17
**document** [6] 5/24 7/16 7/18 17/15
17/18 17/25
**documents** [1] 7/17
**does** [22] 4/16 7/21 8/20 9/8 10/7 15/1
15/12 15/15 20/3 20/4 20/6 20/23 21/18
23/22 28/9 33/2 35/4 36/7 36/8 44/12
46/1 46/2
**doesn't** [35] 8/21 10/18 16/13 17/22
17/25 19/13 21/21 22/1 22/17 23/4
23/11 24/13 24/16 24/24 24/24 25/14
25/16 26/16 27/4 28/8 30/4 30/24 31/11
31/12 31/16 31/23 36/18 37/6 37/8
37/20 41/17 42/4 45/25 47/1 47/18
**doing** [2] 6/6 40/4
**don't** [25] 4/2 4/11 12/7 14/4 18/8 20/16
20/18 23/15 26/1 27/18 31/15 32/1 36/3
36/3 36/12 37/15 38/20 39/8 39/9 39/15
42/8 43/6 44/23 47/8 47/16
**done** [4] 13/18 24/1 27/19 44/24
**doubt** [3] 40/5 40/17 42/24
**down** [3] 29/18 30/6 39/8
**draw** [1] 25/3
**dubious** [1] 41/25
**due** [20] 11/3 30/10 30/15 30/25 31/1
31/4 31/5 31/7 31/11 31/13 33/22 36/15
36/20 36/22 36/24 37/21 37/21 37/22
37/23 44/16
**during** [4] 11/22 11/24 26/15 40/21

## E

**each** [5] 5/11 31/3 36/17 36/23 44/12
**earlier** [3] 23/8 40/1 40/18
**early** [1] 18/18
**effect** [2] 4/1 45/11
**efforts** [1] 34/18
**Eidenberg** [2] 2/11 3/8
**either** [10] 4/21 8/6 9/14 10/23 12/25
14/11 27/4 34/21 41/13 45/16
**election** [2] 21/20 30/19
**element** [1] 12/21
**else** [3] 6/2 16/15 16/18
**enclosed** [1] 5/16
**end** [2] 11/8 46/17
**ended** [1] 28/14
**ends** [2] 27/9 41/11
**engaged** [1] 11/25
**enough** [2] 25/2 35/1
**enter** [1] 17/6
**entered** [5] 5/21 6/1 6/19 7/2 17/15
**entering** [1] 17/17
**enters** [1] 5/12
**entertain** [1] 38/20
**entire** [5] 7/19 11/11 11/14 31/7 31/11
**entitled** [3] 24/16 46/8 49/6
**entitlement** [1] 32/19
**entity** [2] 17/7 17/8
**envelope** [1] 5/16
**equally** [1] 15/1
**erase** [1] 43/12

# E

**error [5]** 44/16 44/18 46/5 46/7 46/12
**essentially [3]** 6/1 10/25 36/17
**established [1]** 16/2
**establishes [1]** 35/20
**estimating [1]** 39/22
**estimation [1]** 40/23
**even [11]** 4/25 12/10 16/7 16/13 16/25 24/3 31/5 32/14 42/23 42/23 47/2
**event [1]** 11/6
**events [1]** 19/8
**ever [1]** 44/24
**every [3]** 5/11 16/5 35/2
**everything [1]** 11/12
**evidence [1]** 12/21
**exactly [2]** 30/23 31/22
**example [2]** 22/19 27/24
**exceed [5]** 10/7 20/1 20/18 21/12 21/24
**exceeded [2]** 10/13 39/16
**exceeding [4]** 20/11 22/7 36/19 39/16
**exceeds [1]** 19/17
**exception [1]** 15/9
**Excuse [2]** 10/4 25/8
**exercise [3]** 21/1 21/7 31/15
**exercises [1]** 29/4
**Exhibit [1]** 20/14
**Exhibit 1 [1]** 20/14
**exists [1]** 14/23
**expanded [1]** 33/7
**expands [1]** 32/24
**expansion [1]** 33/6
**experience [1]** 4/8
**expires [1]** 26/14
**explain [2]** 39/14 39/25
**explicit [1]** 33/4
**explicitly [2]** 9/9 33/1
**expressed [1]** 28/13
**extend [1]** 12/25
**extended [1]** 13/18
**extends [2]** 13/4 26/16
**extensively [2]** 3/13 3/21
**extent [4]** 5/15 46/7 46/7 46/10
**eyes [1]** 33/19

# F

**fact [19]** 4/9 4/22 4/24 4/25 7/24 12/5 15/11 15/20 16/10 23/11 27/13 28/20 31/15 37/19 38/14 39/23 40/18 45/7 45/10
**facts [10]** 5/20 5/21 5/25 6/16 6/17 6/22 8/12 14/17 23/20 43/7
**failed [6]** 32/11 32/12 40/7 46/14 46/22 48/3
**failure [1]** 47/14
**fair [1]** 35/5
**fairly [2]** 3/13 3/20
**faith [1]** 34/17
**fall [1]** 39/8
**falls [2]** 28/23 31/21
**far [1]** 20/8
**fashion [1]** 4/18
**faster [1]** 46/2
**favor [2]** 18/10 42/4
**favorable [4]** 5/1 17/1 18/4 18/9
**favoring [3]** 34/15 35/8 35/8
**FDCPA [8]** 25/2 34/2 43/11 45/18 45/25 47/9 48/2 48/7
**February [4]** 18/18 24/22 40/24 41/2
**February 1 [2]** 40/24 41/2
**February 1st [1]** 24/22
**federal [6]** 10/20 12/18 17/4 17/7 30/12 31/6 31/8 34/4
**fee [1]** 17/9
**fees [1]** 10/14

**FELIX [3]** 1/3 1/43/24
**Felix's [1]** 4/25
**few [6]** 12/11 16/4 18/20 24/8 24/10 24/15
**fide [3]** 44/18 46/7 46/11
**Fifth [1]** 2/8
**figure [1]** 20/13
**file [5]** 26/6 37/14 37/14 37/16 44/9
**filed [9]** 9/15 9/18 18/21 26/3 26/4 28/13 32/15 41/4 47/8
**filing [15]** 25/18 25/20 26/2 26/13 26/21 27/25 37/10 41/7 41/10 42/19 46/9 47/15 47/21 47/22 48/4
**final [5]** 15/6 33/11 35/22 35/22 39/2
**find [8]** 5/18 14/8 18/10 38/16 38/21 38/21 38/25 42/11
**finding [1]** 38/14
**finds [1]** 27/16
**finish [1]** 26/9
**firm [2]** 34/1 47/3
**first [30]** 3/11 8/14 8/15 8/22 9/15 9/15 9/18 18/20 19/15 19/20 25/19 26/2 27/8 29/23 31/20 33/15 33/24 33/25 35/24 36/7 37/19 38/25 39/11 39/18 39/19 40/11 41/4 41/8 41/9 42/19
**fits [1]** 39/16
**five [7]** 10/23 38/17 42/12 42/13 42/16 42/22 43/6
**five-page [1]** 43/6
**five-year [4]** 38/17 42/12 42/16 42/22
**for-profit [1]** 17/7
**forbidden [2]** 47/4 47/7
**forced [1]** 35/2
**foregoing [1]** 49/4
**form [1]** 17/20
**formed [2]** 4/13 6/25
**former [1]** 32/4
**forth [1]** 34/21
**forward [1]** 48/9
**Frances [1]** 2/11
**full [10]** 9/16 10/16 10/21 10/23 12/5 16/5 20/16 20/18 31/13 34/6
**fundamental [1]** 27/3
**fundamentally [2]** 7/2 10/17
**further [7]** 18/12 27/15 38/25 43/15 43/16 44/1 46/18

# G

**gap [1]** 16/18
**general [1]** 38/16
**get [15]** 4/21 5/1 14/6 15/3 16/13 18/17 24/8 24/22 25/5 26/5 31/23 45/20 46/13 47/9 47/10
**gets [1]** 27/23
**getting [2]** 16/12 24/25
**give [8]** 28/21 32/16 32/18 35/18 38/9 40/16 40/25 42/21 44/24
**given [5]** 11/14 28/13 34/1 45/15 45/17
**gives [2]** 8/16 47/19
**giving [3]** 40/5 40/7 42/23
**go [17]** 4/13 4/25 10/3 16/4 19/14 21/18 22/10 22/11 22/11 22/22 22/25 29/3 29/11 29/20 39/5 41/22 45/16
**goes [1]** 21/15
**going [22]** 3/14 8/22 11/22 12/2 12/5 12/8 16/6 16/14 16/17 21/7 22/16 27/24 28/22 29/17 30/6 37/6 38/4 38/4 38/8 41/18 43/21 46/16
**good [2]** 3/6 34/17
**got [6]** 6/25 26/13 26/15 26/24 28/19 46/24
**governed [1]** 34/8
**grant [2]** 43/10 47/14
**granted [1]** 47/17
**greatly [1]** 33/7

**Griffith [1]** 30/8
**Griffith Consumers [1]** 30/8
**ground [1]** 33/2
**guess [10]** 4/20 15/12 19/10 27/25 31/21 31/24 32/3 37/4 43/17 44/20
**Guth [1]** 14/15

# H

**had [19]** 12/9 12/10 12/11 12/12 13/11 13/16 22/7 23/8 24/5 28/16 28/22 32/13 32/14 32/15 45/5 45/7 46/9 47/8 48/1
**half [1]** 40/18
**Hamlet [1]** 14/15
**happen [4]** 36/9 45/1 46/2 46/3
**happened [4]** 6/10 24/6 44/17 46/3
**happening [1]** 26/10
**happens [2]** 14/3 23/21
**has [23]** 9/3 9/14 15/14 15/23 17/17 17/25 21/10 23/23 26/13 30/16 33/7 34/14 34/23 35/6 39/18 40/6 41/16 42/25 44/2 44/2 44/24 46/11 47/23
**hasn't [3]** 18/19 34/1 43/18
**hate [1]** 16/14
**have [38]** 3/15 3/15 3/20 3/22 9/19 9/23 10/1 10/25 11/25 12/10 12/21 13/10 13/11 13/18 18/2 21/6 24/10 27/18 27/22 30/11 31/7 32/23 33/18 34/20 35/14 36/15 37/7 37/14 37/17 37/25 39/6 40/8 42/18 45/2 45/25 46/1 46/8 46/23
**haven't [4]** 8/11 9/11 16/9 44/21
**having [4]** 5/14 17/15 24/1 33/11
**he [16]** 3/25 4/2 5/13 5/13 5/17 5/21 5/24 6/1 17/14 17/23 23/12 23/12 32/18 37/19 45/4 45/5
**he's [2]** 4/7 11/7
**head [1]** 13/11
**hear [2]** 18/4 39/8
**heard [5]** 30/1 33/12 33/20 41/18 46/18
**hearing [3]** 17/20 27/1 48/10
**heavily [1]** 10/20
**Heights [1]** 30/8
**help [1]** 42/4
**her [2]** 30/3 33/15
**here [3]** 3/10 17/1 25/15 26/10 26/23 28/18 30/5 35/23 36/19 46/17
**here's [2]** 38/4 39/4
**highly [1]** 11/1
**Hillsboro [1]** 2/5
**him [5]** 3/25 5/14 32/19 45/7 45/12
**himself [2]** 1/3 17/23
**his [13]** 3/24 4/8 4/8 10/8 10/10 12/1 16/2 16/2 17/22 34/3 37/19 38/15 45/3
**hit [3]** 24/22 24/24 24/25
**holder [2]** 40/6 41/17
**holding [1]** 48/3
**holds [1]** 28/3
**Honor [80]**
**HONORABLE [1]** 1/17
**honored [1]** 20/20
**how [21]** 5/8 5/21 6/25 7/9 13/3 17/3 20/2 20/10 21/6 22/12 33/22 37/13 37/15 38/5 38/8 39/4 41/14 41/15 41/19 41/22 44/25
**However [1]** 9/3
**Huedepohl [3]** 2/11 3/9 37/11
**Hughes [1]** 2/12

# I

**I'll [10]** 3/18 9/25 25/9 30/13 37/25 37/25 38/20 42/10 43/13 48/9
**I'm [41]** 3/14 7/23 14/4 15/12 16/6 16/14 16/16 16/17 20/10 20/12 20/12 21/17 22/22 29/17 29/17 30/14 33/15 33/16 33/20 38/4 38/4 38/8 39/6 39/22 39/24

## I

**I'm... [16]** 40/17 40/17 40/24 41/18 41/19 41/21 41/25 41/25 43/21 43/21 44/11 44/21 44/22 45/1 46/16 48/2
**I've [6]** 3/13 24/25 40/13 41/18 43/8 48/11
**idea [2]** 29/1 35/14
**identification [1]** 14/8
**identifies [1]** 14/22
**identify [3]** 13/23 14/1 15/2
**if [63]**
**impact [1]** 46/18
**impediment [2]** 47/2 47/3
**imply [2]** 14/2 15/22
**import [2]** 4/20 5/25
**important [3]** 32/10 32/13 39/13
**in [161]**
**inaction [1]** 42/24
**inactive [1]** 25/10
**inclined [1]** 42/2
**included [3]** 5/17 7/14 13/22
**including [2]** 15/6 36/10
**indicates [1]** 31/17
**indicating [1]** 22/6
**individual [2]** 4/8 6/18
**inference [4]** 14/6 14/10 14/13 14/16
**information [1]** 13/22
**initial [2]** 35/16 40/4
**inquiry [1]** 6/18
**insignificant [1]** 35/9
**instance [2]** 36/5 45/22
**instead [2]** 12/5 36/19
**insufficient [2]** 8/6 8/7
**intended [1]** 5/24
**intention [1]** 28/13
**interest [1]** 23/16
**interested [1]** 20/10
**interpretation [1]** 26/20
**interpreted [1]** 9/3
**interregnums [1]** 41/16
**into [10]** 5/12 5/13 5/21 6/1 6/19 7/2 17/6 17/15 17/17 35/3
**introduce [1]** 3/5
**inviting [1]** 3/14
**involves [2]** 3/12 3/17
**is [172]**
**isn't [2]** 17/19 26/9
**issue [15]** 3/11 4/24 5/2 5/10 6/10 7/7 9/11 10/24 21/16 25/7 34/12 39/13 42/1 42/3 48/4
**it [131]**
**it's [51]**
**item [1]** 20/19
**its [2]** 13/11 29/4
**itself [7]** 22/8 25/19 29/8 31/20 32/15 34/9 47/10

## J

**January [6]** 11/8 11/17 18/17 36/21 36/22 39/20
**January 31 [1]** 11/17
**January 31st [1]** 39/20
**Jones [1]** 2/12
**JUDGE [7]** 1/18 3/19 30/18 33/13 38/15 46/20 48/13
**judgment [16]** 4/5 4/21 6/12 17/20 26/25 26/25 28/5 28/20 29/9 32/6 32/6 32/11 32/12 32/15 32/20 43/10
**judgments [1]** 32/8
**July [1]** 41/12
**July 19th [1]** 41/12
**jurisdiction [1]** 30/9
**juror [1]** 18/3
**jurors [2]** 18/4 18/8

**jury [2]** 18/10 38/25
**just [22]** 3/14 10/11 10/3 16/15 19/14 19/22 22/9 22/21 27/8 28/25 29/3 30/13 31/10 33/19 35/24 36/19 36/20 39/22 43/1 43/7 46/18 46/21

## K

**Keating [1]** 2/12
**keep [3]** 12/3 12/4 22/21
**Kelly [2]** 2/11 3/9
**kept [2]** 31/2 31/2
**kind [4]** 8/22 11/7 39/23
**Knewtson [2]** 2/4 3/7
**know [10]** 6/24 12/7 17/22 17/25 18/8 23/12 27/23 37/4 41/23 44/23
**known [1]** 6/18
**knows [2]** 17/23 18/7

## L

**language [5]** 20/4 20/6 20/14 29/13 29/21
**last [24]** 9/9 9/10 11/6 11/16 15/12 15/13 16/17 16/24 18/16 19/16 24/7 24/17 25/10 35/11 35/19 35/20 36/8 36/10 36/14 36/20 36/22 38/24 40/21 41/3
**late [11]** 35/3
**later [9]** 9/10 18/20 24/18 35/19 36/8 36/10 38/20 39/13 40/1
**latest [3]** 24/20 37/17 37/18
**latter [2]** 5/4 32/4
**law [52]**
**lawsuit [38]** 9/15 9/18 18/21 25/18 25/19 25/19 25/24 26/2 26/4 26/12 26/13 26/21 26/24 27/8 31/20 37/10 37/12 37/13 37/14 37/15 37/15 37/16 39/1 39/1 41/4 41/8 41/9 41/11 42/19 44/10 44/24 46/9 47/8 47/9 47/21 48/4 48/5 48/6
**lawyer [2]** 27/14 28/19
**lay [1]** 38/5
**learning [1]** 22/15
**least [8]** 5/21 6/9 15/10 24/17 39/23 40/4 44/12 44/23
**legal [2]** 4/10 6/11
**Lending [1]** 13/7
**length [1]** 45/23
**let [8]** 19/14 21/18 25/6 25/8 26/9 30/13 28/25 29/2
**let's [7]** 8/19 10/3 16/15 25/18 26/1 28/25 29/2
**letter [15]** 12/15 22/19 23/13 23/14 23/17 23/17 23/18 36/25 38/9 39/7 40/18 42/21 43/6 44/4 46/25
**letters [5]** 44/4 44/6 44/8 44/22 46/19
**liability [1]** 47/20
**liberty [3]** 11/11 11/13 12/2
**light [4]** 5/1 16/25 18/3 18/9
**like [7]** 3/16 6/16 24/21 25/20 28/8 39/1 47/14
**limit [20]** 3/24 10/8 10/13 10/13 19/17 19/25 20/1 20/11 20/19 21/10 21/10 21/18 21/23 21/24 22/8 22/10 22/11 22/12 36/20 39/16
**limitations [52]**
**limited [1]** 33/9
**limiting [1]** 13/3
**limits [1]** 21/13
**link [1]** 14/10
**linked [1]** 15/14
**little [9]** 4/14 10/3 15/10 16/12 18/16 23/20 26/18 27/17 28/25
**located [1]** 33/7
**logged [1]** 5/13
**logging [1]** 6/21

**long [5]** 13/4 16/10 37/7 37/8 41/11
**longer [1]** 18/16
**look [6]** 3/13 28/10 28/13 31/3 41/19 46/24
**looking [1]** 33/17
**loses [1]** 46/10
**lot [1]** 32/3

## M

**ma'am [1]** 33/20
**made [17]** 5/14 11/6 12/12 12/20 12/24 13/5 15/2 17/11 18/1 18/5 18/8 18/18 35/2 36/16 37/22 38/23 44/2
**mail [2]** 4/15 7/5
**mail-in [1]** 7/5
**mailed [1]** 6/20
**mailer [1]** 7/6
**mailing [1]** 4/15
**main [1]** 3/21
**major [1]** 40/14
**make [10]** 12/2 15/11 18/14 20/18 20/19 24/25 30/3 36/8 36/8 40/7
**makes [4]** 8/18 11/3 15/13 16/5
**making [1]** 13/17 16/16 23/12 30/19 35/6 39/6 42/14
**management [9]** 11/18 15/4 17/5 18/14 23/7 23/14 24/6 37/2 38/23
**manager [7]** 12/8 13/11 13/15 13/19 13/21 18/5 18/25
**many [1]** 44/25
**March [5]** 36/24 39/24 40/13 41/9 41/10
**March 1st [2]** 39/24 40/13
**March 31st [1]** 36/24
**March 4th [2]** 41/9 41/10
**Mark [2]** 2/7 3/6
**match [1]** 39/9
**material [8]** 4/22 5/14 5/15 7/13 8/5 11/3 12/1 34/20
**materially [1]** 35/11
**matter [14]** 4/4 4/18 5/11 5/12 5/18 6/22 15/13 26/19 26/19 27/4 32/7 36/19 38/12 38/25
**mattering [1]** 46/17
**matters [2]** 15/12 48/11
**maximum [1]** 13/10
**may [20]** 3/15 6/14 6/21 6/22 9/21 10/14 11/25 20/15 20/22 20/23 21/3 21/4 30/25 33/1 34/18 39/13 40/18 41/22 42/13 46/17
**maybe [4]** 7/8 28/15 28/18 36/19
**me [26]** 3/7 10/4 19/14 20/24 24/12 24/24 25/6 25/8 25/8 26/9 29/13 29/20 30/13 33/17 37/16 34/6 34/7 38/10 39/7 39/13 39/25 40/25 42/21 43/1 43/7 47/14
**mean [12]** 14/7 16/15 20/1 23/4 24/24 26/5 27/17 30/24 31/11 37/4 37/6 37/20
**meant [1]** 19/4
**mechanism [1]** 6/6
**merely [1]** 46/25
**merits [14]** 25/23 25/24 26/22 27/1 27/12 27/18 27/23 28/5 28/8 28/9 28/12 28/16 31/24 31/25
**MICHAEL [1]** 1/17
**might [3]** 25/16 40/8 47/9
**mind [1]** 39/4
**minimum [8]** 10/24 11/6 11/17 16/23 20/18 31/4 42/12 45/12
**minor [3]** 8/14 8/15 39/12
**missed [2]** 19/21 37/19
**mistake [1]** 35/9
**MO [2]** 1/5 3/3
**moment [5]** 9/19 10/1 22/4 34/4 35/18
**money [3]** 15/15 15/15 18/7
**month [8]** 16/5 22/21 24/18 40/18 41/2

## M

**month...** [3]  42/9 44/13 46/17
**months** [23]  12/11 13/7 13/8 13/12 16/4 18/20 19/1 19/12 24/8 24/10 24/15 30/20 31/9 37/5 38/8 40/8 40/19 40/20 41/5 41/12 41/13 41/24 44/16
**more** [9]  28/7 33/4 37/25 39/7 39/13 42/2 42/5 43/5 45/20
**morning** [1]  3/6
**MOSMAN** [1]  1/17
**most** [4]  5/1 16/25 18/3 18/9
**motion** [1]  29/8
**move** [1]  47/14
**Mr** [3]  2/4 2/7 2/11
**Mr.** [7]  3/24 13/23 21/23 22/5 23/11 23/19 35/22
**Mr. Carlos** [4]  3/24 21/23 23/11 23/19
**Mr. Carlos's** [1]  13/23
**Mr. Newtson** [1]  22/5
**Mr. Passannante** [1]  35/22
**Ms** [2]  2/11 37/11
**much** [2]  31/20 36/19
**must** [3]  10/22 11/2 46/2
**my** [16]  4/20 10/4 21/18 22/14 22/14 24/14 25/4 26/9 29/19 33/17 33/19 33/25 38/6 40/13 43/23 44/20

## N

**N.W** [1]  2/4
**name** [2]  14/4 14/14
**names** [1]  33/19
**nature** [1]  45/18
**necessarily** [1]  18/6
**necessary** [2]  42/11 48/5
**Nedrich** [1]  29/25
**need** [8]  6/24 22/3 27/18 32/1 41/21 41/23 43/6 43/12
**neither** [1]  31/22
**Nesbit** [1]  14/21
**never** [6]  4/1 12/9 16/14 16/18 26/24 28/14
**nevertheless** [1]  29/5
**new** [4]  33/2 33/6 33/8 34/21
**Newtson** [1]  22/5
**next** [2]  11/6 40/14
**no** [29]  1/5 3/3 3/23 4/21 6/22 9/3 12/21 12/24 12/24 13/3 13/9 13/11 14/8 14/9 14/19 14/21 16/7 18/9 18/17 32/19 33/8 33/18 34/19 37/14 38/21 43/5 44/14 45/13 45/24
**nobody** [1]  28/16
**non** [1]  29/3
**non-payment** [1]  29/3
**nonmoving** [1]  17/1
**nonpayment** [9]  16/7 16/7 16/19 18/17 39/12 39/18 39/19 40/11 40/12
**normally** [2]  26/3 26/7
**not** [118]
**note** [7]  10/20 11/4 29/23 30/3 30/4 32/10 32/13
**nothing** [6]  23/21 23/22 31/16 40/8 43/16 45/10
**notice** [6]  11/15 11/25 12/8 12/15 17/13 28/14
**noting** [1]  32/22
**November** [2]  10/6 10/7
**November 3rd** [1]  10/7
**novo** [2]  32/14 32/17
**now** [4]  28/21 38/9 39/8 39/19
**number** [1]  38/12
**numbers** [2]  38/10 43/1

## O

**o0o** [1]  49/2

**obligation** [2]  29/24 30/16
**obviously** [2]  39/21 43/10
**occur** [2]  9/2 41/16
**occurred** [8]  9/13 9/14 21/25 31/8 31/14 37/10 39/20 46/5
**occurs** [5]  8/25 9/9 9/12 21/22 40/11
**October** [1]  9/19
**odd** [2]  16/12 27/17
**off** [15]  9/1 9/14 9/24 12/18 12/19 13/8 13/17 19/12 19/12 30/20 31/8 34/6 34/9 37/3 37/11 37/18
**Official** [1]  49/11
**oh** [2]  28/21 33/16
**Okay** [1]  46/24
**omnibus** [1]  17/20
**on** [83]
**once** [5]  6/18 21/14 21/18 22/24 23/9
**one** [76]
**One's** [7]  5/13 23/17 34/6 41/20 44/9 47/25 48/6
**ones** [1]  43/8
**online** [3]  4/13 6/1 6/21
**only** [7]  18/10 22/8 25/25 27/1 39/6 39/22 43/17
**open** [3]  8/24 9/7 12/3
**operate** [1]  44/22
**operates** [2]  7/18 27/12
**opinion** [3]  34/16 35/4 38/15
**opponent** [2]  30/1 34/13
**opponent's** [1]  33/12
**opportunity** [7]  8/6 8/7 8/17 35/5 35/9 38/9 39/7
**opposed** [1]  6/2
**opposite** [2]  14/6 14/16
**or** [69]
**oral** [3]  1/15 3/3 46/22
**ORCP** [1]  32/8
**order** [1]  6/23
**OREGON** [24]  1/2 1/8 8/4 8/9 8/9 8/16 8/16 17/4 17/8 26/12 34/14 34/25 35/4 35/7 35/8 35/14 35/19 36/1 36/1 36/7 36/8 42/3 42/7 42/9
**Oregon's** [6]  8/8 35/10 35/11 36/13 38/19 42/6
**original** [3]  4/3 29/9 49/6
**other** [20]  1/3 3/19 4/18 4/25 5/1 6/14 7/17 10/22 12/15 14/22 18/3 21/24 25/7 25/16 26/25 28/14 40/10 43/13 44/15 48/10
**otherwise** [3]  32/8 38/22 47/19
**ought** [3]  28/7 39/1 42/6
**our** [15]  3/21 4/15 9/12 12/18 20/15 20/23 21/4 27/3 28/25 29/8 29/9 30/7 33/20 41/11 46/22
**out** [10]  3/24 8/11 8/17 18/3 20/13 29/9 32/23 38/5 39/24 42/11
**outcome** [1]  42/1
**outlined** [1]  33/13
**outside** [2]  27/15 28/23
**over** [10]  6/20 21/15 21/18 21/23 22/10 22/11 22/11 32/1 36/15 42/10
**overstatement** [1]  43/18
**overstating** [1]  43/19
**owes** [1]  12/5
**own** [2]  4/8 47/11

## P

**P.C** [1]  2/12
**page** [2]  29/15 43/6
**paid** [3]  12/20 16/13 16/13
**panic** [1]  39/8
**parameter** [1]  38/12
**parameters** [1]  38/5
**part** [3]  5/15 21/9 21/14
**particular** [11]  6/19 6/23 14/1 23/10

**particularly** [1]  48/6
**parties** [3]  7/22 7/24 8/11
**partner** [1]  22/3
**party** [29]  7/16 8/6 8/25 11/7 11/18 12/8 13/11 13/15 13/19 13/21 17/1 17/5 18/5 18/13 18/25 23/7 23/14 23/17 23/18 24/6 25/11 31/5 37/1 38/22 40/11 40/15 40/22 41/3 42/18
**Passannante** [4]  2/7 2/7 3/6 35/22
**past** [1]  37/23
**PATENAUDE** [4]  1/7 3/4 47/24 47/25
**pay** [13]  10/23 14/2 14/9 14/11 15/22 16/6 16/14 16/17 22/21 23/16 24/3 29/24 30/16
**paying** [4]  12/11 12/12 23/21 23/25
**payment** [60]
**payments** [15]  18/1 18/14 18/17 22/25 23/7 23/9 23/12 24/19 25/10 25/12 31/6 35/6 36/14 37/19 38/22
**pays** [2]  16/15 16/18
**pendency** [1]  26/15
**percentage** [1]  10/24
**perhaps** [2]  14/15 38/1
**period** [19]  11/16 11/22 11/24 12/2 12/25 13/7 13/15 15/4 25/11 29/2 29/3 31/15 37/20 41/12 42/17 42/23 42/25 45/25 46/1
**periods** [1]  25/10
**permanent** [1]  11/25
**permission** [2]  15/24 16/3
**permit** [1]  10/23
**person** [3]  22/23 23/25 29/5
**persuaded** [2]  44/21 44/22
**Peter** [2]  2/11 3/8
**phone** [2]  6/2 7/9
**pick** [1]  32/3
**place** [3]  2/4 3/2 42/8
**plaintiff** [53]
**plaintiff's** [12]  5/10 5/12 5/19 10/7 15/14 15/19 15/24 15/25 41/22 42/2 45/10 46/5
**plaintiffs** [4]  3/18 8/1 19/8 43/15
**plan** [3]  11/19 40/22 41/3
**play:** [1]  33/22
**play: breach** [1]  33/22
**point** [9]  3/21 6/21 18/17 25/5 26/2 26/5 27/19 37/4 40/10
**pointed** [3]  3/24 8/11 29/9
**pointing** [1]  33/19
**policy** [3]  34/15 35/7 42/4
**popped** [1]  13/11
**Portland** [4]  1/8 2/8 2/13 2/18
**position** [6]  7/4 7/8 12/9 18/22 27/3 46/25
**possibilities** [1]  31/22
**possibility** [1]  42/22
**postpone** [1]  34/10
**potential** [1]  39/23
**Potentially** [2]  12/17 13/2
**precise** [4]  39/7 41/23 42/5 43/7
**preclude** [2]  33/2 47/18
**prejudice** [4]  27/24 32/7 32/9 32/21
**presented** [1]  5/2
**preserved** [1]  44/19
**pretty** [1]  36/13
**prevent** [1]  22/17
**prevented** [2]  44/9 48/1
**previous** [3]  27/14 28/19 28/20
**previously** [1]  33/9
**principal** [1]  23/16
**principle** [2]  13/3 42/7
**principles** [1]  39/4
**prior** [7]  10/25 17/13 32/24 32/25 33/4

# P

**prior... [2]** 34/5 48/4
**privileges [1]** 20/9
**probably [1]** 10/6
**problem [2]** 16/16 26/23
**procedures [2]** 46/12 46/14
**proceedings [3]** 1/16 48/16 49/5
**processed [1]** 20/20
**produced [2]** 17/16 17/18
**profit [1]** 17/7
**program [2]** 15/4 23/7
**prohibited [1]** 34/5
**promise [6]** 14/2 14/9 14/11 15/22 24/3 34/21
**promissory [2]** 30/3 30/4
**properly [2]** 14/23 14/24
**proposition [3]** 14/5 14/18 29/6
**prove [1]** 34/3
**provide [2]** 35/5 45/12
**provided [3]** 4/7 7/16 46/2
**provides [2]** 8/6 10/14
**provision [5]** 9/4 20/13 20/17 21/19 28/11
**provisions [1]** 36/2
**PS [1]** 2/7
**public [1]** 35/7
**pulling [1]** 39/24
**purchase [1]** 9/10
**purposes [2]** 36/18 40/13
**pursuant [1]** 17/16
**pursue [4]** 27/14 35/5 43/12 45/7
**pursued [1]** 27/10
**put [2]** 3/15 34/20
**puts [1]** 38/7

# Q

**qualifies [1]** 9/7
**question [29]** 4/5 4/10 4/21 5/2 6/11 7/25 8/24 9/6 16/8 18/2 22/7 22/14 22/14 22/25 23/11 24/11 24/15 25/8 26/9 27/2 35/24 38/6 38/13 42/5 43/11 46/16 46/18 47/6 47/21
**questions [4]** 23/1 24/12 37/25 43/13
**quickly [1]** 46/13
**quit [5]** 12/11 12/12 23/8 40/20 40/21
**quite [2]** 12/25 30/21
**quits [1]** 23/21

# R

**raised [1]** 48/11
**ran [1]** 40/20
**rational [3]** 4/25 18/10 38/21
**read [3]** 20/21 29/13 29/20
**reading [1]** 29/18
**real [3]** 13/3 42/7 45/18
**really [7]** 8/11 14/5 19/17 26/19 33/21 36/18 42/4
**reanalyze [1]** 43/6
**reason [6]** 8/4 10/17 25/25 28/15 28/18 45/4
**reasoning [1]** 11/5
**reasons [2]** 25/15 40/25
**recall [1]** 23/12
**recalls [1]** 44/15
**receive [2]** 20/16 24/1
**received [4]** 15/1 23/14 44/17 46/6
**receives [1]** 11/18
**receiving [3]** 23/18 24/19 37/1
**recess [3]** 38/2 38/3 48/12
**record [3]** 3/5 39/19 49/5
**recover [1]** 35/9
**reduce [3]** 28/20 32/11 32/12
**reduced [2]** 26/24 28/5
**refer [1]** 29/8

**refered [1]** 22/9
**referring [1]** 29/14
**refers [1]** 32/6
**refrain [1]** 46/9
**regard [3]** 7/5 7/9 11/21
**regardless [1]** 34/17
**regulated [2]** 10/20 11/1
**reinstated [1]** 33/1
**reintroduce [1]** 43/7
**relates [1]** 44/3
**relation [1]** 27/8
**relationship [1]** 18/6
**relatively [1]** 39/12
**relying [1]** 27/2
**remaining [1]** 6/10
**remedy [1]** 48/5
**remember [1]** 14/4
**renewed [1]** 24/19
**repayment [1]** 12/4
**repeatedly [3]** 17/21 17/24 32/23
**reply [1]** 42/19
**REPORTER [2]** 2/17 49/11
**repose [1]** 45/25
**repudiation [1]** 16/23
**request [7]** 44/17 44/25 45/5 45/11 45/24 46/2 46/6
**requests [1]** 46/13
**require [2]** 17/5 31/9
**required [9]** 13/8 31/6 32/16 32/18 45/9 45/12 45/14 46/3 46/9
**requires [3]** 8/14 10/15 38/19
**requiring [1]** 45/19
**reserving [1]** 44/4
**resolution [2]** 6/12 39/2
**resolvable [1]** 6/22
**resolve [4]** 38/12 43/13 43/21 46/16
**resolved [5]** 4/5 31/23 31/25 38/6 44/21
**resolving [1]** 43/20
**respond [2]** 45/9 45/24
**responded [1]** 46/10
**response [1]** 33/25
**responses [1]** 46/13
**restart [3]** 8/18 14/25 16/1
**restarted [1]** 13/24
**restarts [3]** 14/3 15/22 36/17
**restating [1]** 3/20
**result [1]** 39/2
**resulting [2]** 28/14
**retain [1]** 18/13
**returned [1]** 7/6
**reversal [1]** 33/2
**revert [1]** 42/8
**reviewed [1]** 46/23
**reviewing [1]** 5/14
**rich [3]** 15/14 15/23 16/5
**right [34]** 5/4 7/12 8/1 8/12 8/21 9/22 10/8 16/24 19/5 21/1 28/21 29/4 31/13 31/14 31/15 32/14 32/15 32/19 33/9 33/18 34/7 34/10 34/13 39/8 41/24 42/5 43/9 43/23 44/13 45/7 45/16 47/23 48/2 48/8
**rights [1]** 47/17
**rise [1]** 47/20
**risk [1]** 45/19
**Rivera [1]** 29/24
**RMR [2]** 2/17 49/10
**Room [1]** 2/18
**roughly [2]** 39/5 40/13
**rule [1]** 41/15
**rules [1]** 38/19
**ruling [1]** 39/12
**rulings [1]** 39/4
**run [6]** 12/10 30/10 31/12 40/12 40/14 43/1
**running [13]** 7/22 10/18 13/4 13/16

22/17 23/8 23/9 34/25 35/15 39/11 40/20 49/21 41/7
**runs [5]** 9/5 40/3 41/4 41/6 41/10

# S

**S.W [3]** 2/8 2/12 2/18
**said [4]** 17/25 23/12 30/17 33/8
**same [7]** 7/4 8/20 11/5 11/10 18/24 19/7 33/3 40/22 46/24
**say [14]** 11/13 16/15 18/4 20/6 20/7 21/3 21/7 28/12 28/21 30/23 33/6 43/1 47/10 47/14
**saying [10]** 16/6 16/14 22/20 23/18 30/18 30/21 30/22 30/24 31/2 37/22
**says [18]** 7/23 15/20 16/16 20/5 21/10 21/17 22/9 22/10 22/15 23/3 26/13 26/20 27/12 28/11 31/6 37/2 45/13 48/3
**score [1]** 20/6
**second [8]** 7/21 41/11 41/18 45/4 45/6 45/11 45/13 45/21
**seeing [1]** 48/10
**seems [3]** 16/12 23/13 27/17
**segments [1]** 21/12
**send [1]** 15/15
**sending [2]** 6/20 31/3
**sends [2]** 8/9 15/24
**sent [4]** 37/22 44/6 44/8 45/4
**sentence [3]** 20/21 20/22 21/3
**separate [1]** 22/25
**series [1]** 19/8
**set [1]** 3/3
**setting [3]** 30/2 30/2 34/4
**settled [1]** 30/9
**settlement [1]** 35/8
**settlements [2]** 34/15 42/4
**several [2]** 4/12 36/10
**sheet [1]** 7/18
**shortly [1]** 38/9
**should [5]** 28/22 33/18 34/2 38/6 46/21
**shouldn't [3]** 4/18 21/2 28/21
**showed [1]** 18/25
**showing [1]** 13/15
**Shumway [3]** 2/17 49/9 49/10
**side [2]** 5/1 28/14
**sign [1]** 5/24
**signature [5]** 3/23 4/16 7/18 49/7 49/7
**signed [3]** 5/17 7/18 17/6
**significant [1]** 11/6
**signing [2]** 7/15 49/4
**signs [1]** 7/16
**similar [1]** 9/4
**similarly [1]** 1/4
**simplest [1]** 29/3
**simply [3]** 11/11 23/17 44/4
**since [5]** 35/6 40/23 41/21 41/23 42/11
**single [2]** 8/17 35/2
**sir [1]** 5/6
**situated [1]** 1/4
**situation [2]** 14/7 15/1
**six [13]** 13/7 13/8 13/12 19/1 19/12 20/20 31/9 35/10 35/12 37/5 38/19 40/8 42/8
**six-year [4]** 35/10 35/12 38/19 42/8
**slight [2]** 34/19 35/1
**slightest [1]** 34/16
**slightly [2]** 33/4 42/2
**slow [1]** 29/18
**small [1]** 35/9
**Smith [1]** 38/15
**so [57]**
**sole [3]** 20/15 20/23 21/4
**solely [1]** 46/4
**solicitation [1]** 6/21
**some [13]** 4/18 8/22 12/15 12/25 15/9 19/1 26/2 28/15 29/2 38/5 39/23 40/10

**S**

some... [1]  42/10
somebody [4]  4/17 16/15 16/18 33/19
someone [1]  23/21
something [5]  3/14 6/2 6/16 25/20 37/1
sometime [1]  40/15
somewhat [1]  25/15
somewhere [3]  18/15 24/7 38/7
sorry [5]  14/4 20/12 29/17 33/15 33/16
sort [13]  14/5 14/16 19/7 28/4 28/5 29/2
  33/23 35/25 39/21 39/22 40/23 41/11
  42/24
speak [1]  22/3
specific [2]  13/23 39/12
speed [1]  46/4
spending [1]  15/10
spots [1]  39/6
start [17]  3/14 3/18 7/22 8/9 8/19 16/16
  20/23 22/17 23/6 24/8 24/9 24/11 24/13
  24/24 26/2 35/15 39/11
started [9]  13/16 14/12 18/19 20/21 23/8
  23/9 23/23 37/12 37/13
starting [3]  22/24 40/6 40/24
starts [14]  12/16 19/15 19/18 23/25
  24/12 24/18 29/5 29/9 36/11 36/14
  36/15 40/12 41/3 43/8
state [5]  23/13 26/19 26/20 32/8 47/19
stated [2]  32/23 33/1
statement [2]  4/7 18/12
statements [5]  31/3 31/4 36/23 37/22
  37/22
states [6]  1/1 1/18 2/17 9/9 14/5 17/22
status [2]  39/23 39/24
statute [101]
statutory [5]  26/20 29/13 29/20 39/16
  45/24
still [5]  12/10 13/18 18/18 27/5 27/6
stops [2]  41/7 43/8
structure [1]  11/10
Stucki [1]  2/4
subject [2]  12/4 38/15
submitted [2]  13/21 44/5
subpoena [1]  17/16
subsequent [2]  17/18 17/24
subsequently [1]  17/16
such [2]  34/23 43/11
sue [5]  8/14 16/6 16/18 16/22 22/22
sufficient [6]  13/22 14/1 14/8 14/10
  14/24 15/21
suggested [1]  45/4
suing [1]  47/5
suit [4]  33/1 47/2 47/3 47/23
Suite [3]  2/4 2/8 2/12
summary [6]  4/5 4/21 6/12 17/19 29/8
  43/10
sure [7]  5/25 15/12 41/15 41/19 41/21
  41/25 45/1
susceptible [3]  6/12 6/15 19/23
suspension [1]  20/9

**T**

take [16]  7/4 7/8 13/14 14/9 19/1 22/25
  34/18 35/2 35/23 37/20 37/25 41/17
  41/18 42/10 45/19 48/9
taken [2]  3/13 38/3
takes [2]  15/9 27/15
taking [3]  23/7 23/9 24/15
talk [3]  25/18 26/1 31/20
talked [2]  25/9 25/11
talking [1]  33/15
telephone [1]  6/20
tell [6]  30/13 35/24 38/10 43/1 43/7
  46/21
telling [1]  33/23

tells [2]  16/5 18/8
term [1]  12/4
terms [10]  3/23 5/15 5/15 7/14 9/13
  10/10 12/4 22/18 33/22 33/23
testified [1]  17/14
testimony [1]  47/12
than [12]  3/19 26/25 28/9 32/4 38/22
  39/8 40/1 40/1 42/3 43/5 45/20 46/2
Thank [13]  3/10 5/6 5/7 7/20 19/5 28/24
  31/19 37/24 44/11 46/15 48/8 48/13
  48/14
that [336]
that's [40]  4/20 5/3 5/5 5/25 6/9 8/2 8/8
  10/17 16/8 18/7 19/4 19/19 19/20 20/1
  20/24 21/14 21/15 21/23 21/25 21/25
  22/12 22/14 22/16 26/5 27/19 27/22 28/2
  30/23 31/9 31/14 33/18 39/12 39/21
  40/19 40/25 41/5 41/13 42/11 43/14
  44/18 47/16
their [11]  21/1 27/14 28/17 28/19 28/20
  30/14 30/15 31/3 31/14 36/23 37/20
them [11]  24/15 26/5 28/21 30/23 31/9
  31/22 33/13 36/10 37/22 43/12 44/12
then [34]  7/15 8/8 9/8 12/9 13/14 18/20
  19/8 20/7 21/19 22/11 22/17 23/6 23/24
  23/25 24/5 24/6 26/15 27/19 27/24 32/1
  35/23 36/16 36/24 37/5 37/10 38/3
  39/10 40/20 41/7 41/10 41/21 41/23
  43/12 47/21
there [34]  3/22 3/23 4/2 5/1 6/14 6/21
  8/4 8/5 10/21 12/11 13/25 14/10 14/11
  16/7 17/13 18/15 19/20 21/6 23/5 25/23
  25/23 26/11 26/23 26/25 28/15 32/19
  33/21 34/2 34/19 35/25 39/5 44/18
  44/20 46/17
there's [28]  4/12 4/12 4/14 8/10 8/22 9/6
  11/16 12/24 16/18 20/3 20/25 20/25
  20/25 21/10 21/16 22/2 27/5 29/11
  31/16 35/17 36/4 36/4 37/5 43/17 45/18
  45/24 47/6 47/7
there's still [1]  27/5
thereafter [1]  34/18
thereby [2]  38/17 39/2
therefore [4]  14/9 14/11 18/15 39/18
these [4]  4/9 8/12 43/1 48/1
they [34]  3/22 5/16 10/25 20/7 21/1 21/6
  21/21 22/25 23/9 23/14 24/10
  28/20 30/11 30/22 31/2 31/2 31/15
  31/18 32/8 36/25 37/2 37/7 37/21 37/22
  38/20 40/8 44/12 47/4 47/5 47/8 47/9
  48/1 48/1
they're [7]  22/24 23/22 24/16 30/18
  30/19 30/21 37/23
they've [3]  21/18 24/23 28/19
thing [3]  8/20 43/17 43/17
things [4]  4/9 36/9 38/8 41/14
think [50]
think that [1]  33/14
thinks [1]  31/18
third [25]  2/18 11/7 11/18 12/8 13/11
  13/15 13/19 13/21 17/5 18/5 18/13
  18/25 23/7 23/14 23/17 23/18 24/6
  25/11 31/5 37/1 38/22 40/15 40/22 41/3
  42/18
third-party [23]  11/7 11/18 12/8 13/11
  13/15 13/19 13/21 17/5 18/5 18/13
  18/25 23/7 23/14 23/17 24/6 25/11 31/5
  37/1 38/22 40/15 40/22 41/3 42/18
this [82]
thorough [1]  32/19
those [14]  5/17 5/20 9/17 14/25 16/20
  23/12 33/23 37/21 39/4 42/10 42/13
  43/9 44/21 46/14
though [6]  12/10 16/7 16/13 23/21 25/5
  27/7

thought [1]  33/16
thoughts [2]  33/11 45/2
three [4]  8/14 27/3 33/21 35/3
three-year [1]  27/3
through [5]  6/1 19/7 19/14 27/11 38/24
throughout [1]  17/22
ticking [9]  18/19 19/16 23/23 24/8 24/9
  24/12 24/13 24/18 41/4
time [24]  3/2 11/16 11/23 11/24 12/2
  12/25 15/4 15/10 16/18 19/1 19/15 24/7
  25/11 30/10 31/15 32/20 35/3 37/20
  42/10 42/18 42/23 45/23 45/24 46/1
timely [1]  32/15
times [1]  44/25
today [6]  41/15 42/14 43/5 43/15 43/20
  43/21
toll [19]  21/2 21/21 24/2 24/17 25/14
  25/20 25/24 26/4 26/8 26/14 26/16
  27/13 27/18 27/24 28/8 31/16 34/25
  37/6 44/12
tolled [12]  14/12 28/22 31/18 31/23
  31/24 42/17 42/19 44/7 44/10 44/12
  44/15 44/16
tolling [14]  27/2 27/9 28/11 28/17 28/23
  32/24 33/8 39/3 44/3 44/22 44/25 46/8
  46/10 47/1
tolls [1]  26/22
took [3]  4/1 45/23 46/11
transcript [3]  1/16 49/5 49/6
treat [2]  22/12 28/7
treated [1]  39/1
treats [1]  20/10
trial [2]  32/14 32/17
trier [1]  4/25
trigger [3]  36/1 37/8 40/9
triggering [1]  38/17
true [1]  36/9
Truth [1]  13/6
try [2]  27/6 34/18
trying [2]  20/12 25/3
twice [1]  44/24
two [9]  9/17 22/25 24/12 31/21 31/24
  40/19 40/20 44/6 46/19
type [1]  9/7
typically [2]  25/24 46/2

**U**

ultimate [1]  45/25
uncle [3]  15/15 15/23 16/5
under [37]  4/3 5/17 7/15 8/23 8/24 9/7
  9/12 10/21 13/6 13/24 14/20 14/21 15/3
  17/7 17/8 21/5 21/10 22/18 24/3 25/2
  30/11 32/8 33/21 34/1 34/20 34/21 36/2
  38/18 38/22 40/22 40/22 41/3 42/13
  42/14 42/22 47/1 48/9
understand [3]  24/14 31/25 37/15
understanding [1]  43/24
undertook [1]  45/8
undisputable [1]  17/10
undisputed [3]  5/22 17/13 39/19
Unfortunately [1]  44/14
UNITED [3]  1/1 1/18 2/17
unless [5]  8/4 8/10 32/8 37/17 38/18
Unlike [1]  10/19
unlikely [1]  12/20
until [17]  3/25 4/1 9/2 11/14 12/12 13/4
  20/7 24/25 31/7 37/14 40/14 40/20
  40/21 41/4 44/4 46/9 47/5
unwritten [1]  6/24
up [16]  13/11 13/15 18/25 19/1 19/13
  22/13 27/9 28/14 30/13 31/9 38/11
  38/23 40/8 44/11 46/17 46/22
upon [3]  23/2 33/2 35/15
us [4]  8/10 33/23 38/7 42/4
used [3]  4/2 20/19 33/18

**V**

**Va [2]** 29/25 30/8
**valid [1]** 47/19
**various [1]** 36/9
**verification [14]** 44/3 44/17 44/25 45/4
45/6 45/11 46/1 46/6 46/13 46/19 46/25
47/11 47/15 48/4
**verify [3]** 45/14 46/25 47/5
**version [1]** 22/23
**very [5]** 10/20 16/9 30/4 37/18 39/17
**view [16]** 11/22 13/14 13/17 15/13 16/24
17/10 18/2 23/22 24/5 24/16 25/9 25/16
27/7 31/21 35/23 44/12
**viewed [1]** 20/5
**violate [2]** 43/11 47/9
**violates [1]** 35/7
**violation [5]** 10/10 22/15 34/2 42/7
47/18
**Virginia [41]** 5/18 7/15 7/23 7/25 8/10
8/13 8/19 8/20 8/23 9/3 9/8 9/8 9/10
13/25 13/25 14/1 14/20 15/25 16/9 24/4
26/8 26/12 27/11 27/15 28/3 29/6 31/17
32/5 32/22 33/5 33/8 33/21 33/23 34/1
34/17 34/21 34/23 36/1 38/16 38/18
47/1
**Virginia's [4]** 26/18 26/20 32/24 42/6
**virtue [1]** 5/2
**voluntarily [1]** 28/15

**W**

**wait [6]** 30/19 31/9 31/10 37/7 37/8
43/13
**waited [1]** 13/10
**waiting [2]** 18/16 37/5
**waits [1]** 19/12
**waiving [1]** 23/3
**walk [1]** 19/7
**want [6]** 3/11 16/13 24/23 26/1 27/6
31/18
**wanted [2]** 43/24 45/6
**was [49]** 3/20 3/22 3/23 4/2 6/24 9/15
9/18 10/1 12/20 13/17 16/2 16/21 17/11
17/13 17/14 17/15 18/5 18/6 19/3 19/20
25/23 25/23 26/11 26/23 26/25 27/10
28/15 29/22 29/23 32/16 32/18 32/19
33/4 33/5 33/9 33/15 36/24 36/25 37/11
40/23 43/23 44/17 45/5 45/8 45/9 45/12
46/4 46/6 46/8
**wasn't [6]** 3/25 23/5 25/22 27/8 28/16
34/7
**way [11]** 4/25 5/2 18/3 33/5 33/9 34/19
39/10 41/20 41/22 42/1 45/16
**ways [1]** 4/13
**we [20]** 3/20 4/2 4/11 8/9 12/21 14/12
20/15 20/16 20/22 20/23 21/3 21/4
23/15 28/22 29/15 30/7 31/20 31/25
42/18 43/2
**we'll [4]** 18/18 19/7 22/21 48/12
**we're [7]** 22/16 23/3 23/3 28/17 41/24
42/13 42/22
**we've [4]** 22/20 25/9 25/11 46/24
**website [1]** 5/13
**week [2]** 43/1 43/5
**well [25]** 3/9 4/20 8/19 9/21 10/12 11/13
16/8 17/19 19/14 20/4 21/14 28/12 30/5
30/6 30/9 30/11 30/13 30/17 31/2 39/17
42/13 43/18 44/1 47/13 48/3
**well-settled [1]** 30/9
**went [2]** 21/22 41/20
**were [14]** 5/15 5/16 7/14 16/21 18/25
18/25 23/20 33/16 37/21 37/21 38/23
44/6 46/12 48/1
**what [30]** 3/20 6/10 7/23 10/25 11/21
14/7 14/14 19/1 19/4 20/5 21/3 24/9

24/15 25/9 28/3 29/9 30/3 30/4 30/23
31/6 31/18 34/17 35/6 36/4 38/10 40/4
43/7 44/20 46/3 46/23
**what's [7]** 20/22 21/3 26/10 29/1 29/6
34/12 35/23
**whatever [1]** 28/18
**when [44]** 7/21 8/25 9/5 9/14 9/14 11/17
12/21 13/23 14/3 18/20 19/11 19/16
19/16 19/17 19/19 19/20 21/22 21/25
21/25 22/1 23/6 23/6 26/14 28/22
29/10 29/11 29/24 31/13 31/14 33/23
36/5 37/18 37/21 39/8 39/17 39/21
39/22 40/6 40/11 43/14 44/17 45/8 46/5
**whenever [2]** 8/18 41/16
**where [19]** 6/15 7/16 12/23 14/12 15/1
15/15 17/13 18/7 18/17 20/13 28/16
29/15 31/24 33/1 33/8 35/5 36/25 39/6
43/1
**whether [34]** 3/11 3/16 4/9 4/17 4/19
6/10 6/19 6/23 9/6 19/12 20/2 20/3
20/24 21/1 21/16 21/16 21/21 22/7
24/11 24/15 24/23 34/24 36/4 38/13
39/25 42/11 43/14 44/6 44/10 44/23
47/7 47/23 48/1 48/1
**which [24]** 9/1 9/15 10/21 11/6 11/10
13/15 14/6 15/2 24/12 24/16 25/14 28/8
28/9 28/12 29/4 31/8 33/2 40/15 40/15
40/19 41/11 42/5 42/18 46/1
**whichever [1]** 9/10
**while [5]** 12/7 13/18 23/22 31/18 42/10
**who [10]** 15/13 15/23 17/5 17/25 18/6
18/8 32/11 32/12 35/2 48/6
**whole [3]** 16/16 26/5 27/19
**why [12]** 6/9 10/17 15/12 15/18 22/17
25/19 26/9 30/24 31/25 40/25 43/8
45/20
**will [4]** 26/14 34/24 35/1 35/18
**window [1]** 12/23
**wish [1]** 46/17
**within [3]** 8/14 42/25 44/24
**without [12]** 6/18 15/24 25/3 26/21
27/12 27/24 32/7 32/9 32/20 42/7 42/23
49/6
**won't [1]** 22/10
**worded [1]** 33/5
**words [1]** 40/10
**work [3]** 8/17 12/3 41/19
**working [2]** 13/18 22/21
**workout [1]** 8/22
**works [2]** 7/9 39/10
**worth [1]** 32/22
**would [40]** 5/18 5/20 6/15 6/24 8/5
13/11 14/6 14/25 15/25 16/9 23/24 24/2
24/7 24/9 24/10 24/20 26/8 27/1 29/13
31/17 31/25 35/4 35/11 35/12 35/15
36/1 36/20 39/11 40/14 41/15 41/16
41/19 41/22 42/8 43/12 45/20 46/8
47/8 47/10
**wouldn't [5]** 12/10 24/8 25/19 26/3
41/21
**write [2]** 17/23 22/19
**writing [5]** 13/25 14/2 14/22 15/21 34/21
**written [18]** 3/12 3/17 4/3 4/9 4/17 4/19
5/12 5/19 6/11 6/24 7/2 23/15 24/3
38/13 38/14 38/17 42/12 42/15
**wrong [1]** 41/1

**Y**

**Yeah [1]** 24/14
**year [10]** 27/3 35/10 35/12 37/10 38/17
38/19 42/8 42/12 42/16 42/22
**years [4]** 8/15 10/23 35/3 42/14
**yes [33]** 4/6 4/11 5/23 6/4 6/8 6/13 7/3
7/6 10/9 10/12 10/19 11/9 11/20 12/14
12/17 13/2 13/13 13/20 15/5 15/8 15/17

17/3 18/14 19/3 19/6 19/9 32/5 35/17
36/12 43/3 43/4 44/8 45/3
**yet [6]** 12/7 12/25 13/16 13/17 24/1
32/16
**you [135]**
**you'd [4]** 6/9 7/4 11/5 32/3
**you'll [2]** 39/6 39/25
**you're [16]** 11/11 11/13 16/6 16/12
18/24 22/18 27/19 27/24 29/14 29/18
29/21 30/17 30/19 30/22 30/22 30/24
**you've [6]** 3/12 11/14 26/15 28/13 28/13
30/15
**your [128]**
**yourself [1]** 3/5
**yourselves [1]** 38/10