IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**BRIAN CARLOS,**

       Plaintiff,

       v.

**PATENAUDE & FELIX, A.P.C.,**

       Defendant.

No. 3:14-cv-00921-MO

OPINION AND ORDER

**MOSMAN, J.**,

       Plaintiff Brian Carlos seeks $128,845.00 in attorney fees and $2,532.60 in costs after accepting an offer of judgment for one of his four claims brought against Defendant Patenaude & Felix under Federal Debt Consumer Protection Act, 15 U.S.C. 1692 *et seq*. For the reasons stated below, I GRANT in part Carlos's Motion for Attorney Fees [62] and award $57,430.00. I also DENY Defendant's Motion to Reconsider and Vacate Order Granting Taxation of Costs [78], thereby allowing my previous Order awarding costs of $2,532.60 [76] to stand.

       **I.    BACKGROUND**

       On July 19, 2013, Defendant Patenaude & Felix, a law firm acting on behalf of its client, Capital One Bank (USA), NA, filed a lawsuit against Plaintiff Brian Carlos to collect on a defaulted debt. On February 21, 2014, another district court dismissed with prejudice Capital One's suit against Plaintiff, filed by Defendant, pursuant to a stipulated agreement of the parties.

       Plaintiff brought this action under the Fair Debt Collection and Practices Act, 15 U.S.C. 1962 et seq. (FDCPA) alleging that Defendant's attempt to collect on Plaintiff's Capital One account amounted

1 – OPINION AND ORDER

to four counts of FDCPA violations: (1) the collection action was time barred; (2) Defendant did not disclose it was time barred; (3) the creditor's allegation of quantum meruit relief was a meritless claim and should not have been alleged; and (4) Defendant overstated the debt. Plaintiff also moved to certify a class of similarly situated plaintiffs on the two statute of limitations claims. On September 14, 2015, I issued an Order [56] denying Plaintiff's motion to certify the class and granting Defendant's motion for partial summary judgment, dismissing counts one, two, and three of Plaintiff's FDCPA claim. Plaintiff accepted an offer of judgment of $2,349.83 plus reasonable attorney fees and court costs on the remaining fourth count—that Defendant overstated the debt. Plaintiff now seeks $128,845.00 in attorney fees and $2,532.60 in costs [62].

## II.    LEGAL STANDARD

15 U.S.C. § 1692k(a)(3) provides that "in the case of any successful action" under the FDCPA, the defendant is liable for "the costs of the action, together with a reasonable attorney's fee as determined by the court." This language "makes an award of fees mandatory." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). In determining what amount is "reasonable," courts first "calculate the 'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate." *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (citation omitted). Then courts evaluate the factors discussed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975), that were not already subsumed in the lodestar calculation. *Fischer*, 214 F.3d at 1119. These *Kerr* factors may, in the court's discretion, be taken into account to adjust the lodestar amount. *Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996) (discussing the *Kerr* factors that bear on reasonableness that may be used to adjust the lodestar amount). The district court has "considerable discretion" in

determining the reasonableness of attorney fees. *Webb v. Ada Cnty., Idaho*, 195 F.3d 524, 527 (9th Cir. 1999).

### III. LODESTAR CALCULATION

As a threshold matter, I must first calculate the lodestar figure by determining the reasonable hourly rate for each attorney and multiplying that rate by the number of hours reasonably expended on the litigation.

#### A. Reasonable Hourly Rate

The burden is on the party seeking fees to show "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). The Oregon State Bar Economic Survey (the "OSB Survey") is commonly used as an "initial benchmark" for determining reasonable rates in this district. *Toth v. INA Life Ins. Co. of New York*, 2010 WL 170260, at *6 (D. Or. Jan. 13, 2010) (quotation omitted).

Plaintiff has two attorneys working on his case— Bret Knewtson and Mark Passannante. I will discuss the reasonable rate for each attorney separately.

##### i. Bret Knewtson's Hourly Rate

Mr. Knewtson seeks $350 per hour for his work on this case. In support of this proposed hourly rate, Mr. Knewtson offers his own declaration. For the following reasons, I have determined that a rate of $300 per hour is appropriate for Mr. Knewtson.

3 – OPINION AND ORDER

In determining Mr. Knewtson's reasonable hourly rate, the first factor I consider is the rate determinations for Mr. Knewtson from previous cases. *See United Steelworkers of Am.*, 896 F.2d at 407. Mr. Knewtson references several consumer debt cases that he litigated in state court where he was awarded hourly rates ranging between $200 and $225 per hour. Mr. Knewtson also references a number of similar cases in federal court where he was awarded an hourly rate ranging between $275 and $300 per hour. Notably, in an FDCPA case before Judge Brown in 2012, the court took into account Mr. Knewtson's "substantial expertise in FDCPA . . . matters" and awarded Mr. Knewtson a $275-per-hour rate. *See Salzer v. Griggs & Assoc.*, 3:11-cv-07-BR. In 2014, Judge Simon awarded a rate of $300 per hour due to Mr. Knewtson's "considerable and specialized" experience in consumer debt litigation and the good result he obtained in the case. *See Campista v. Creditors Financial Gr. LLC*, 3:13-cv-0640-SI.

In addition to considering awards in previous cases, I also consider the "prevailing fees in the community." *United Steelworkers of Am.*, 896 F.2d at 407. In order to do this, I must first determine what constitutes Mr. Knewtson's "community." The OSB Survey provides the average hourly rates for attorneys in various markets throughout Oregon. Mr. Knewtson contends that because he does work throughout the Portland metropolitan area, his community is Portland and I should only consider the rates of Portland attorneys when determining his hourly rate. Defendant notes that the Portland region of the OSB Survey does not include the Tri-County suburb where Mr. Knewtson's office is located. Defendant contends the OSB Survey Tri-County rate, which is considerably lower than Portland's rate, should apply. Mr. Knewtson notes that other judges, including Judge Brown and Judge Simon, have applied Portland rates in the past. I find that applying Portland rates to Mr. Knewtson is appropriate in this case.

The OSB Survey data is organized into practice areas as well as into categories based on years of experience. Therefore, in order to use the OSB Survey to arrive at a reasonable hourly rate, I must also

determine under which practice area Mr. Knewtson's work in this case best fits. Mr. Knewtson argues that he should be awarded the Business/Corporate litigation rate, which is higher than the rate of most other OSB Survey practice areas. Defendant recommends that court base Mr. Knewtson's rate on his twelve years of experience and not any practice area in particular. I find the category that offers the best comparison to Mr. Knewtson's work in this case is the civil litigation attorney category.

Within each practice area, the OSB Survey provides the hourly rate of attorneys that fall within various percentiles of experience. Mr. Knewtson argues that because of his expertise in FDCPA work, he should fall somewhere between the 75th and 95th percentile. Defendant argues that Mr. Knewtson more appropriately falls around the median. As other judges in this district have noted in the past, Mr. Knewtson has considerable and specialized experience working on FDCPA cases like this one. Given his level of expertise in his field, I find that the 75th percentile rate is appropriate.

Applying the OSB Survey given these findings, a Portland attorney practicing civil litigation in the 75th percentile would command an hourly rate of $300 per hour. I find that this rate is appropriate for Mr. Knewtson's work in this case.

### ii. Mark Passannante's Hourly Rate

Mr. Passannate seeks $425 per hour for his work. Although Plaintiff submits Mr. Passannate's declaration, the declaration provides only limited information and argument to justify the proposed billing rate. Mr. Passannate's declaraton cites to only one state court case from April 2013 in which the judge awarded a rate of $400 per hour. Mr. Passannate also states in his declaration that he has practiced law for twenty-one years and that he focuses his practice on real estate litigation. Plaintiff argues that while the rate Mr. Passannate usually charges for non-contingent cases is $220 per hour, because this case was contingent, his rate should be allowed to be higher. However, the lodestar figure may not be adjusted just to reflect a contingency fee arrangement. *See Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992) (opinion vacated in part on denial of rehearing).

5 – OPINION AND ORDER

Defendant claims that Mr. Passannate's rate should be closer to $326 per hour, the average rate for attorneys with twenty-one years of experience. I find Mr. Passannate's reasonable hourly rate is $350 per hour. This rate takes into consideration Mr. Passannate's many years of experience while also considering the lack of evidence Plaintiff provided the court to justify a rate that is considerably higher.

### B. Hours Reasonably Expended

A fee applicant has the burden of "documenting the appropriate hours expended." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). To this end, the fee applicant should use sound billing judgment regarding the number of hours worked and should provide the district court with billing records supporting the time claimed. *Id.* at 433.

In his motion, Plaintiff breaks down the amount of time each attorney spent on the class claims, the overstatement claim, the statute of limitations claim, and on general litigation. Plaintiff also attaches exhibits that provide detailed time entries. (*See* Pl. Mot. [62] Exs. 1 and 2.) Defendant argues that Plaintiff should only be able to recover attorney fees and costs associated with the overstatement claim for which Plaintiff accepted an offer of judgement and not for the class claims and the statute of limitations claim on which Plaintiff did not prevail. Defendant also argues that the general litigation category of hours is defined too broadly and therefore those hours should not be awarded.

The party advocating for the reduction of the lodestar figure bears the burden of establishing that a reduction is justified. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). Lack of proportion between the amount of attorney fees requested and the size of the award attained is not a reason to justify a reduction because the FDCPA, like many other consumer protection and civil rights statutes, was enacted in part to secure legal representation for plaintiffs whose injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements. *See City of Riverside v. Rivera,* 477 U.S. 561, 576–78, (1986) (plurality opinion); *id.* at 586 (Powell, J., concurring in judgment). Rather, the principle behind any argument for reduction of the

6 – OPINION AND ORDER

lodestar amount should be to assure that fees are awarded only to the extent that the litigation was successful. *Hensley v. Erckerhart*, 461 U.S. at 436 (noting that the most "critical factor" in calculating the lodestar is the "degree of success" counsel obtained in the case).

Plaintiffs, like the plaintiff here, often present multiple theories for relief

> involving numerous challenges to institutional practices or conditions . . . . Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

*Id.* at 436.

A two-part analysis applies when a plaintiff achieves limited success to determine how much of the total time expended should be awarded. First, the court excludes all time expended on unrelated and unsuccessful claims; and second, for any related-but-unsuccessful claims, the court evaluates "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended." *Cabrales v. Cnty. of Los Angeles*, 864 F.2d 1454, 1465 (9th Cir. 1988) *cert. granted, judgement vacated*, 490 U.S. 1087 (1989) *and opinion reinstated*, 886 F.2d 235 (9th Cir. 1989) (internal quotation and citation omitted). The Supreme Court explained in *Hensley* that claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories[;]" claims are related if they "involve a common core of facts or [are] based on related legal theories." *Hensley*, 461 U.S. at 434–35.

### i. *Plaintiff's Unsuccessful Claims*

Defendant argues Plaintiff's statute of limitations and class claims are unrelated to the overstatement claim and therefore Plaintiff should not recover any attorney fees relating to those claims. In support of its argument, Defendant cites *De Amaral v. Goldsmith & Hull*, 2014 WL 1309954 (N.D. Cal. Apr. 1, 2014). In *De Amaral*, the district court granted summary judgment in favor of the plaintiffs,

7 – OPINION AND ORDER

finding that a state court complaint filed by a collection firm against the plaintiffs violated the FDCPA because it was materially misleading. *Id.* at *1. However, the court declined to award the plaintiffs attorney fees for work done on a statute-of-limitation claim because it was unrelated to the claim on which the plaintiffs prevailed. *Id.* at *4 (holding that "there is nothing demonstrating that any efforts expended on the statute of limitations claim contributed to the [plaintiffs] successfully prevailing on the FDCPA . . . claims"). Plaintiff notes our case is distinguishable because the statute of limitations claim in our case revolved around the tolling issue which was centered on two events: first, the lawsuit filed by a different collection firm; and second, the forbearance and payment agreement entered into after Plaintiff defaulted. Plaintiff contends that the facts around these events were central to developing the overstatement claim. For example, in order to determine whether the statute of limitations tolled, the parties reviewed the period statements, contract, records of forbearance, and payment records. Plaintiff contends these are the same documents he used to prove the debt was overstated; carefully reviewing the payments was integral for both issues.

I find that Plaintiff has demonstrated that the statute of limitation claim, the class action claims, and the overstatement claim share a core set of facts sufficient to find that the claims are related.

### ii. Reduction for Limited Success

Even though the class action and statute of limitations claims are related to the overstatement claim, I must take into consideration the significance of the overall relief obtained by Plaintiff in relation to the hours reasonably expended. *Cabrales*, 864 F.2d at 1465. Defendant contends Plaintiff's request for $128,845 in attorney fees is unreasonable in light of his failure to certify a class and his failed statute of limitations claims. Furthermore, Defendant argues that the parties' litigation was driven by these unsuccessful claims. Defendant provides a thirty-two page exhibit where it goes through each of Mr. Knewtson's and Mr. Passannante's time entries and notes how each entry did or did not relate to the overstatement claim. (Huedepohl Decl. Ex. 2.) Defendant argues that of the over 351 hours spent by the

8 – OPINION AND ORDER

two attorneys, only 36.10 hours was related to the overstatement claim and should be awarded. Plaintiff argues that it would be inappropriate to limit attorney fees to include only time that directly supported the overstatement claim. In addition, Plaintiff contends that Defendant had control over most of relevant documents and people in this case and therefore Plaintiff's discovery techniques were necessarily over-inclusive at times.

There is no precise method for determining the amount of attorney fees that a partially successful plaintiff should recover. *Hensley,* 461 U.S. at 436. A district court may attempt to determine particular hours that should be eliminated from the lodestar calculation for claims upon which the plaintiff was unsuccessful, or "may simply reduce the award to account for the limited success." *Id.* at 436–37; *see also Schwarz v. Secretary of Health & Human Services,* 73 F.3d 895, 906 (9th Cir. 1995) (district court has authority "to make across-the-board percentage cuts" in the number of hours claimed "as a practical means of trimming the fat from a fee application").

Only less than 10 percent of the attorneys' time was spent on the successful overstatement claim while the rest of the time was spent on ultimately unsuccessful claims and on "general litigation" expenses. So there is certainly a need to trim "fat from [the] fee application." *Schwarz*, 73 F.3d at 906. While the statute of limitations and class action claims shared common core facts with the overstatement claim, the limited success that Plaintiff obtained necessitates a reduction in the overall number of hours spent on the ultimately unsuccessful claims. Therefore, I find that 50 percent reduction in the number of hours spent on the statute of limitations and class action claims is appropriate.

### iii. Plaintiff's General Litigation Category

Plaintiff seeks the recovery of 165 hours that he classifies as "general litigation," which he defines as "time spent conferring with opposing counsel, client and co-counsel, discovery issues, preparing discovery requests, and reviewing documents filed with the court, identifying how to appeal dismissal of counts and class, preparing for trial, settlement issues, and fee litigation." (Pl. Mot. [62] at

9 – OPINION AND ORDER

2.) The party seeking an award of attorney fees bears the burden of establishing entitlement to an award and documenting the time expended and the hourly rates. *Hensley,* 461 U.S. at 437. Billing records should be maintained in a manner that allows the reviewing court to identify distinct claims. *Id.*

Plaintiff contends that these general litigation hours were spent in a way that cannot be apportioned to a particular claim in the case. Plaintiff suggests that a 10 percent reduction is appropriate for the general litigation time. Defendant argues that Plaintiff's general litigation time entries are not specific enough. Defendant contends that since less than 10 percent of Plaintiff's hours were spent litigating the successful overstatement claim, only 10 percent of the general litigation hours should be awarded.

I am concerned with how much time Plaintiff allocated to the general litigation category. Totaling 165 hours, this category is more hours than any other single claim. Having reviewed Defendant's Exhibit 2 which makes a note of each time entry, it is clear that Plaintiff's attorneys have not kept their billing records in a manner that allows this court to review them in light of different dispositions of distinct claims. Because of this, I find that a 50 percent reduction of the hours expended for general litigation is appropriate, reflecting the 50 percent reduction imposed on the hours spent on the statute of limitations and class action claims.

### C.  Conclusion on Lodestar Figure

The total lodestar figure is $57,430. This reflects hourly billable rates of $350 per hour for Mr. Passannante and $300 per hour for Mr. Knewtson. This also reflects an award of all of the hours expended on the overstatement claim and a 50 percent reduction of the class certification and statute of limitations claims as well as for the general litigation hours.

| Attorney | Billable Rate | Allowed Hours on Class Claims | Allowed Hours on Overstatement Count | Allowed Hours on Statute of Limitations Count | Allowed Hours on General Litigation | Total Lodestar Fee |
|---|---|---|---|---|---|---|
| **Mark Passannante** | $350/hr | 3.4 hrs | 3.8 hrs | 19.3 hrs | 17.5 hrs | $15,400 |
| **Bret Knewtson** | $300/hr | 20.3 hrs | 13 hrs | 41.8 hrs | 65 hrs | $42,030 |
| **Total** | | *27.1 hrs* | *16.8 hrs* | *61.1 hrs* | *82.5 hrs* | *$57,430* |

## IV.    *KERR* FACTORS

After having determined the reasonable hourly rate and the hours reasonably expended, I next consider whether the following factors suggest a further enhancement or reduction of the lodestar figure:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr,* 526 F.2d at 70. While the *Kerr* factors may impact the amount of the fees awarded, the lodestar figure is presumed to be reasonable. *Morales*, 96 F.3d at 363–64 ("After making [the lodestar] computation, the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation.").

I have considered all of the relevant *Kerr* factors in my above analysis. Therefore, I do not find that any further adjustment to the lodestar figure is warranted.

## V.    BILL OF COSTS

Plaintiff has submitted a Bill of Costs for $2,532.60 [67]. On January 7, 2016, I entered an Order approving Plaintiff's Bill of Costs [76]. Defendant has filed a Motion to Reconsider and Vacate that

Order [78]. I have considered Defendant's objections to Plaintiff's proposed Bill of Costs, and for the following reasons, deny Defendant's motion to reconsider.

Plaintiff's submitted Bill of Costs includes court reporter appearance fees for several depositions. Defendant objects to Plaintiff recovering costs incurred for depositions Defendant claims are unrelated to the overstatement claim. Specifically, Defendant objects to the costs associated with the depositions of Mr. Edmunds, Mr. Patenaude, and Ms. McGregor.

Defendant argues that the costs associated with Mr. Edmunds's deposition should not be included because he was deposed at a time when no party had disclosed him as a witness and Plaintiff never amended his discovery responses or initial disclosures to reflect Mr. Edmunds as a possible witness at trial. Defendant did not employ Mr. Edmunds when it filed the underlying 2013 lawsuit against Plaintiff, nor did Mr. Edmunds handle Plaintiff's account. Plaintiff responds that Mr. Edmunds worked at Defendant's office sometime in 2012 and 2013, so it was reasonable to assume that Mr. Edmunds, a lawyer, had knowledge about the filing of lawsuits by Defendant. I find that an award for Mr. Edmunds's deposition reporter appearance fees is appropriate.

Defendant also argues that Mr. Patenaude's deposition costs should be excluded. Plaintiff deposed Mr. Patenaude as a corporate designee solely on issues relating to Plaintiff's statute-of-limitations claims. Defendant argues that not only is this claim not related to the overstatement claim, but also that Mr. Patenaude lacked the time to prepare on the topics subsequently addressed during the deposition. If Defendant had an issue with the notice of deposition, then it should have requested a set over rather than raising the issue as an objection to Plaintiff's Bill of Costs. Furthermore, as noted above, the statute of limitations claims were related to the overstatement claim. I therefore grant the portion of the Bill of Costs associated with Mr. Patenaude's deposition.

Lastly, Defendant argues that Ms. McGregor's deposition costs should be excluded because her deposition centered around the *bona fide* error defense that was unrelated to the overstatement claim. Plaintiff explains that it was reasonable to depose Ms. McGregor because she also testified about how Defendant calculated the amount alleged to be owed by Plaintiff and also about what documents she relied upon to issue complaints, garnishments, and prepare default judgments. Because of these ties to the overstatement claim, I award the costs associated with Ms. McGregor's deposition.

Therefore, I DENY Defendant's Motion to Reconsider [78] and allow my prior decision granting Plaintiff's request for Bill of Costs [67] to stand in its entirety for $2,532.60.

## VI.  CONCLUSION

I GRANT in part Plaintiff's Motion for Attorney Fees [62] and award $57,430 in attorney fees, reflecting the limited success that the Plaintiff had on his FDCPA claim. Furthermore, I DENY Defendant's Motion to Reconsider [78] and permit my prior decision granting Plaintiff's request for Bill of Costs [67] to stand in its entirety for $2,532.60.

DATED this   18th   day of March, 2016.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
Chief United States District Judge